UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MELANIE HAMMER,

                            Plaintiff,

      - against -

TOWN OF BEDFORD NEW YORK, DEPARTMENT OF
BUILDING BEDFORD NEW YORK, ZONING BOARD
OF APPEALS BEDFORD NEW YORK, BUILDING
INSPECTOR TOWN OF BEDFORD NEW YORK
(ALBERT CIRACO), ATTORNEY FOR THE TOWN OF
BEDFORD NEW YORK (ERIC GORDON, ESQ. &
ROBERT ZITT, ESQ.),

                            Defendants.
------------------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-2618 (CS)

Appearances:

Melanie Hammer
Brooklyn, New York
*Pro Se Plaintiff*

Gerald S. Smith
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint.  (ECF

No. 44.)  For the following reasons, Defendants' motion is GRANTED.

## I.      **BACKGROUND**

      For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in

Plaintiff's Amended Complaint.  (*See* ECF No. 41 ("AC").)

A.    **Facts**

Plaintiff, Melanie Hammer, owns an 11.69 acre property in the Town of Bedford, New York (the "Town"), in an area zoned Residential One Acre ("R1A").  (AC ¶¶ 4-5; *see id.* ¶ 21.)  In addition to a main house, the property includes a pre-existing, legal, non-conforming cottage and a detached garage "on its own acre."  (*Id.* ¶ 8.)  The garage has a Certificate of Occupancy for a recreation room on the second floor and since at least 2000 has been listed on a property map filed with the Town's Department of Buildings as a "residence structure."  (*Id.* ¶ 9.)  "At some point," a bathroom and kitchen were installed in the recreation room, thereby converting it into an accessory dwelling unit ("ADU").  (*Id.* ¶ 12.)  On an unstated date, the Town's Building Department dispatched an inspector to Plaintiff's property in response to a complaint made by Plaintiff's former tenants, who Plaintiff alleges to be "politically connected" because they are related to a former Westchester County official.  (*Id.* ¶¶ 18-21.)  On April 27, 2023, the Building Inspector, Defendant Albert Ciraco, issued Plaintiff a Notice of Violation citing Bedford Town Code § 125-12, entitled "Lots," alleging that Plaintiff had remodeled a bathroom on the property without obtaining a permit.  (*Id.* ¶¶ 18, 22, 28.)

On June 1, 2023, Plaintiff submitted an application for retroactive construction permits.  (*Id.* ¶¶ 23-24.)  That same day, Ciraco orally denied Plaintiff's application, again citing Bedford Town Code § 125-12.  (*Id.* ¶ 25.)  Ciraco did not issue a written denial, and thus Plaintiff could not appeal his decision to the Zoning Board of Appeals ("ZBA").  (*Id.* ¶¶ 25-26.)  On July 6, 2023, Plaintiff refiled her application with the ZBA.  (*Id.* ¶ 26.)  Because Plaintiff had not yet received a written denial, she refiled her application a third time on September 7, 2023.  (*Id.* ¶ 27.)  On September 22, 2023, the Department of Buildings issued a written denial of her application based on Bedford Town Code § 125-79.1A, entitled "Cottages."  (*Id.* ¶ 28.)  The

denial stated that the "garage apartment" on Plaintiff's property was considered a "cottage," which is not permitted in R1A Zoning Districts.  (*Id.* ¶¶ 30-31.)  The denial also directed Plaintiff to apply for a use variance.  (*Id.* ¶ 34.)

At the November 2, 2023 ZBA meeting at which Plaintiff's appeal was heard, Defendant Ciraco appeared on behalf of the Department of Buildings and Defendant Eric Gordon appeared as Town Counsel on behalf of the Town of Bedford.  (*Id.* ¶¶ 35, 37.)  At the hearing, the ZBA voted to uphold the Building Inspector's interpretation of Town Code § 125-79.1A as applying to a R1A Zoning District "by 'implication,'" and affirmed his view that the apartment constituted a cottage.  (*Id.* ¶ 36.)[1]

On November 30, 2023, Plaintiff filed an Article 78 Petition, seeking review of the ZBA decision.  (*Id.* ¶ 39.)  Two judges to whom it was assigned recused themselves, and on December 7, 2023, it was reassigned to Acting Supreme Court Justice George Fufidio.  (*Id.* ¶¶ 41-45.)  Also on December 7, 2023, the ZBA met and issued a written denial that changed the rationale for the decision in some unspecified way.  (*Id.* ¶¶ 46-48, 51-53, 55.)  Plaintiff describes the December 7, 2023 ZBA meeting as "**A SECOND HEARING AT WHICH PLAINTIFF WAS NOT PERMITTED TO PARTICIPATE OR BE HEARD**," (*id.* ¶ 46 (emphasis in original) (citing ECF No. 1-16)), but her basis for that allegation is an email from Defendant Gordon that makes

---

[1] Town Code § 125-79.1A provides, "In the R-2A and R-4A Districts, the Planning Board may grant a special permit to create a cottage in an existing accessory building, provided that . . ." and lists several requirements.  The "implication" to which Plaintiff objects is the implication that because the special permit may be issued for cottages on property in the R-2A and R-4A Districts, it may not be issued for property in other Districts.  The principle of *expressio unius est exclusio alterius* – "that is, mention of one impliedly excludes others," *Brennan-Centrella v. Ritz-Craft Corp. of Pa.*, 942 F.3d 106, 111 (2d Cir. 2019) – is well recognized in the law, but the correctness, or not, of Ciraco's and the ZBA's interpretation does not drive the outcome here.  (Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations and footnotes.)

clear that the meeting was not a hearing.  It explains that at the December 7 meeting, the ZBA

would consider and vote on a formal written resolution setting forth its findings of facts and

conclusions, without hearing any further public discussion.  (ECF No. 1-16.)[2]  In any event, on

December 8, 2023, the Town, the ZBA and the Building Inspector jointly filed a revised

resolution with the Town Clerk.  (AC ¶ 52.)[3]

On February 9, 2024, Judge Fufidio issued a decision denying Plaintiff's Petition, finding

that the Town's denial of the variance to legalize the garage apartment was not arbitrary and

capricious.  (*Id.* ¶ 56; *see* ECF No. 45-2.)[4]  Following this decision, on February 16, 2024,

Plaintiff served notice of her intent to bring a civil rights action against Defendants.  (AC ¶ 96.)

Plaintiff also filed a notice of appeal with the Appellate Division, Second Department on March

18, 2024.  (*Id.* ¶ 61.)  Defendants received notice of Plaintiff's appellate brief on April 23, 2024.

(*Id.* ¶ 62.)

---

[2] "If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations." *Olin Corp. v. E.I. Dupont De Nemours & Corp.*, No. 05-CV-100, 2006 WL 839415, at *1 (W.D.N.Y. Mar. 27, 2006); *see Emps.' Ret. Sys. of Gov't of Virgin Islands v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011) (collecting cases).  But whether or not the meeting constituted a hearing does not affect the outcome here.

[3] The AC states that the revised resolution can be found as Attachment 2 to the AC, or ECF No. 39-2, but that document is a resolution from 2024 that authorizes the commencement of litigation against Plaintiff.

[4] Although the AC states that the decision was issued on February 9, 2025, (AC ¶ 56), the decision itself, attached to Defendants' memorandum of law in support of its motion, and of which I make take judicial notice, *see Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) (Article 78 petition and state court decision are public records appropriate for judicial notice), shows that the decision was rendered on February 9, 2024, (*see* ECF No. 45-2).

On May 6, 2024, Defendant "Robert Gordon"[5] issued a summons for Plaintiff to appear in Town Justice Court, (*id.* ¶ 63), and on June 11, 2024, Gordon filed the summons in Bedford Justice Court formally charging Plaintiff with six violations that had been cited in the Notice of Violation, (*id.* ¶ 67).  That summons was dismissed on August 29, 2024 by Bedford Town Justice Jodi Kimmel for facial insufficiency and failure to proceed within the required speedy trial period under Criminal Procedure Law § 30.30.  (*Id.* ¶ 70; ECF No. 1-3.)[6]  Meanwhile, on July 30, 2024, Plaintiff filed a grievance against Zitt and Gordon with the "Appellate Division, 9th Department."  (AC ¶ 68.)[7]

On September 9, 2024, Plaintiff filed a Notice of Claim on the Secretary of State alleging additional violations by Gordon and others.  (*Id.* ¶ 71.)  On September 17, 2024, Zitt refiled in Bedford Justice Court a second summons bringing the same charges against Plaintiff.  (*Id.* ¶ 72.)[8]  On October 1, 2024, the Town Board held a public vote and passed a formal resolution to pursue litigation against Plaintiff.  (*Id.* ¶ 73.)  On November 12, 2024, Town Justice Menken dismissed the second summons for facial insufficiency, as it contained no allegations regarding violations

---

[5] It is not clear if Plaintiff meant to refer to Defendant Robert Zitt or Defendant Eric Gordon.

[6] A court may take judicial notice of state court decisions on a motion to dismiss, for the fact of what they contain, but not for the truth of the matters asserted.  *See, e.g.*, *Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021) (collecting cases).

[7] There are only four Appellate Divisions in New York.  Plaintiff may have meant to refer to the Appellate Term for the Ninth Judicial District.

[8] Bedford Town Justice David A. Menken's decision dismissing the accusatory instrument states that the criminal proceeding was commenced against Plaintiff on August 29, 2024 by the filing of a Notice to Appear and Information by the Town of Bedford, (ECF No. 1-5), which would have been before Plaintiff filed her Notice of Claim.  I may consider Judge Menken's decision because Plaintiff incorporated into her AC the exhibits to her original Complaint.  (*See* AC ¶ 82.)  But this discrepancy does not affect the outcome in any event.

on dates other than April 27, 2023, a date already addressed by Judge Kimmel's order.  (*Id.* ¶ 74; ECF No. 1-5.)  Zitt filed a notice of appeal that same day.  (AC ¶ 75.)

On December 10, 2024, Plaintiff filed another Notice of Claim against Defendants, alleging a course of malicious conduct, two unlawful prosecutions, *Brady* violations and pursuit of litigation against Plaintiff without an evidentiary basis.  (*Id.* ¶ 76; ECF No. 1-8.)

On January 21, 2025, the Appellate Division, Second Department heard oral argument on Plaintiff's appeal from the decision on her Article 78 Petition.  (AC ¶ 77.)  The Second Department recently rendered its decision, affirming Judge Fufidio's decision.  (*See* ECF No. 65.)  Plaintiff has since filed a motion for leave to appeal to the New York Court of Appeals. (*Id.*)

## B.    Procedural History

Plaintiff filed her initial complaint on March 27, 2025.  (ECF No. 1.)  On May 15, 2025, Defendants filed a pre-motion letter in anticipation of their motion to dismiss.  (ECF No. 16.)  At the pre-motion conference on May 30, 2025, the Court granted Plaintiff leave to amend and set a briefing schedule on Defendants' proposed motion to dismiss.  (*See* Minute Entry dated May 30, 2025.)

On June 10, 2025, Plaintiff filed her AC, asserting eighteen causes of action and alleging a conspiracy to deprive Plaintiff of her constitutional rights under Section 1983.  (ECF No. 41.) The instant motion followed.  (ECF No. 44.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

6

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).[9]

---

[9] Plaintiff is an attorney representing herself, which means "[she] is not entitled to the special solicitude and latitude courts traditionally afford to *pro se* litigants."  *Anthes v. Nelson*, 763 F. App'x 57, 60 n.2 (2d Cir. 2019) (summary order); *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing [her]self ordinarily receives no such [special] solicitude at all.").

B.      **Documents Properly Considered**

"Documents outside of the pleadings are not generally considered in the context of a

motion to dismiss."  *Noel v. Wal-Mart Stores, E. LP*, 764 F. App'x 17, 19 (2d Cir. 2019)

(summary order).  But, in addition to considering the facts alleged in the complaint, a district

court may consider

> documents attached to the complaint as exhibits, and documents incorporated by
> reference in the complaint.  Where a document is not incorporated by reference,
> the court may nevertheless consider it where the complaint relies heavily upon its
> terms and effect, thereby rendering the document integral to the complaint.  For a
> document to be considered integral to the complaint, the plaintiff must rely on the
> terms and effect of a document in drafting the complaint[;] mere notice or
> possession is not enough.  And even if a document is integral to the complaint, it
> must be clear on the record that no dispute exists regarding the authenticity or
> accuracy of the document, and it must be clear that there exist no material
> disputed issues of fact regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New*

*York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v.*

*Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25,

2021).  A court may also consider "matters of which judicial notice may be taken."  *Goel v.*

*Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Both parties have submitted extraneous documents for consideration.  I discuss whether I

may consider those documents as necessary throughout this opinion.

III.    **DISCUSSION**

A.      **Department of Buildings**

As an initial matter, Defendants argue that the Department of Buildings, Bedford New

York must be dismissed because it is not an entity that is subject to suit.  (ECF No. 46 ("Ds'

Mem.") at 24.)  Plaintiff did not address this argument in her opposition and has therefore

abandoned her claims against the Department of Buildings.  *See Sullivan v. City of N.Y.*, No. 14-

8

CV-1334, 2015 WL 5025296, at *4 (S.D.N.Y. Aug. 25, 2015) (attorney proceeding *pro se* abandoned claims against certain defendants where he failed to respond to those defendants' motion to dismiss but continued to pursue claims against other defendants), *aff'd*, 690 F. App'x 63 (2d Cir. 2017) (summary order); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

Even if she had not abandoned her claims, the Court would still dismiss the claims against the Department of Buildings, because, as an administrative arm of the Town of Bedford, it is not a suable entity. *See, e.g.*, *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 26 (S.D.N.Y. 2022) ("[A]gencies of a municipality are not suable entities because they are merely administrative arms of a municipality, and do not have a legal identity separate and apart from the municipality."); *Cent. UTA of Monsey v. Vill. of Airmont, N.Y.*, No. 18-CV-11103, 2020 WL 377706, at *24 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against Building Department because it was an administrative arm of the Village and not a suable entity); *Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 226 (E.D.N.Y. 2014) (dismissing § 1983 claim against waste management department where plaintiff did not challenge defendants' contention that

9

department was not legal entity separate and apart from town and it was clear to court that department was administrative arm of town).[10]

### B.   Count One

Plaintiff challenges Building Inspector Ciraco's issuance of a Notice of Violation based on Bedford Town Code § 125-12, alleging that his actions, along with those of other Defendants, violated her procedural due process rights under the Fourteenth Amendment and amounted to a taking under the Fifth Amendment.  (AC ¶¶ 120-31.)[11]

#### 1.   Procedural Due Process

"A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process."  *Harper v. Vill. of Hillburn*, No. 25-CV-342, 2025 WL 2653673, at *7 (S.D.N.Y. Sept. 16, 2025).

First, Defendants argue that Plaintiff cannot plead facts establishing a deprivation of property because the Article 78 proceeding validated the Defendants' permit denials.  (Ds' Mem. at 9.)  Plaintiff not only argues that she can show a protected property interest in the lawful use of her property and thus a constitutional injury, but also that Defendants are in fact estopped

---

[10] A zoning board of appeals is also an agency of the municipality, *see, e.g.*, *Crown Castle Fiber LLC v. Town of Oyster Bay*, No. 21-CV-6305, 2024 WL 1051171, 1 n.1 (E.D.N.Y. Jan. 19, 2024) (recommending dismissal of zoning board of appeals as agency of municipality and thus non-suable entity), *report and recommendation adopted*, 2024 WL 1090305 (E.D.N.Y. Mar. 13, 2024); *Verizon Wireless of E. LP v. Town of Wappinger*, No. 20-CV-8600, 2022 WL 282552, at *1 n.2 (S.D.N.Y. Jan. 31, 2022) (proper defendant in case was town, not town's agencies or boards), but Defendants curiously did not move to dismiss the claims against the ZBA on this basis.  In any event, as will be explained below, Plaintiff fails to state a claim against the ZBA.

[11] Although the AC names only Defendant Ciraco in this claim, Plaintiff apparently intended to assert it against the Town as well.  (*See* ECF No. 49 ("P's Opp.") at 22.)  I address the Town's liability below.  *See supra* Section III.L.

from arguing that she was in violation of Bedford Town Code § 125-12. (*See, e.g.*, P's Opp. at 17, 24 n.13.) She contends that "[a]s a matter of law all of the counts that refer to BTC 125-12 were proven in criminal court under the decisions of Judge Kimmel and Me[n]ken to be baseless." (*Id.* at 17.) This contention is frivolous. That the instruments were facially insufficient, or that the prosecution was not ready for trial in the required time frame, does not rule out that Plaintiff was in fact, in the real world, in violation of § 125-12. Even an outright acquittal does not preclude a finding of civil liability. *See, e.g.*, *von Bulow by Auersperg v. von Bulow*, 634 F. Supp. 1284, 1309 (S.D.N.Y. 1986) ("[T]here is ample precedent for civil proceedings based upon alleged criminal acts, even though the defendant has been acquitted of those acts in prior criminal proceedings."), *on reargument*, No. 85-CV-5553, 1986 WL 7781 (S.D.N.Y. July 8, 1986); *see also Cross v. Potter*, No. 09-CV-1293, 2010 WL 5314151, at *6 (N.D.N.Y. Dec. 20, 2010) ("It is possible for the preponderance of the evidence standard to be satisfied even if the higher beyond a reasonable doubt standard is not. Because of this difference in the standards, evidence of acquittals generally are inadmissible at civil trials concerning the same incident."). Indeed, not only did neither judge in dismissing the charges imply that there was insufficient evidence of a violation, but both went out of their way to note that their dismissals were without prejudice and did not preclude a finding that Plaintiff was in violation. (*See* ECF No. 1-3 at 2 ("The foregoing determination [(dismissal without prejudice)] notwithstanding, the Court recognizes that this dismissal does not remedy the situation of alleged ongoing violations of the Town Code, which, it is claimed, require remediation by the Defendant. The parties should be guided accordingly."); ECF No. 1-5 at 3 ("As Judge Kimmel recognized in her August 28, 2024 decision, the granting of Defendant's motion to dismiss does

11

not remedy the situation of alleged ongoing violations of the Town Code, which the Town claims required remediation by the Defendant.  This matter is therefore not dismissed with prejudice.").)

In any event, even assuming Plaintiff sufficiently pleaded a protected property interest in the form of the continued use and rental of her property and that the Town's interpretation of § 125-12 was incorrect, (P's Opp. at 15, 19-20), Plaintiff's procedural due process claim fails because she received adequate process.  "[P]rocedural due process requires that the Town provide an opportunity to be heard in a meaningful manner at a meaningful time . . . ." *Vanderveer v. Zoning Bd. of Appeals*, No. 19-CV-3833, 2020 WL 7042669, at *5 (E.D.N.Y. Dec. 1, 2020), *aff'd sub nom. Vanderveer v. Zoning Bd. of Appeals Town of E. Hampton*, No. 20-4252, 2021 WL 3745741 (2d Cir. Aug. 25, 2021).  Here, Plaintiff had the opportunity to dispute the April 27, 2023 Notice of Violation in the Town Justice Court.  (AC ¶¶ 70, 126.)  And she also received a hearing before the ZBA at which she had the opportunity to speak and present evidence, and pursued both an Article 78 proceeding before the Westchester County Supreme Court in which she was able to brief the relevant issues, including the Notice of Violation, (*see* ECF No. 45-2 at 1, 2 n.1), and an appeal to the Appellate Division in which she once again briefed the issues and argued before the Second Department.  (AC ¶¶ 36, 39, 61-62, 69, 71.)  This constitutes a sufficient post-deprivation remedy to preclude her due process claim.  *See Underhill Land, LLC v. Town of Catskill*, No. 24-CV-1527, 2025 WL 2793756, at *6 (N.D.N.Y. Oct. 1, 2025) (procedural due process claim barred because Article 78 adjudication of Town's decisions to deny certificates and issue stop work orders provided plaintiff with process), *appeal filed*, No. 25-2740 (2d Cir. Oct. 29, 2025); *Ariz. Hudson Valley LLC v. Allen*, No. 22-CV-1306, 2023 WL 3936640, at *5 (N.D.N.Y. June 9, 2023) ("In the land-use context, courts in this Circuit have repeatedly held that the availability of an Article 78 proceeding in state court is a

post-deprivation remedy that satisfies procedural due process."); *Vanderveer*, 2020 WL 7042669, at *5-7 (due process claim without merit where plaintiff had hearing before ZBA and Article 78 hearing before state court); *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) ("[W]here . . . a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy.").

Additionally, even though there was a delay between the issuance of the Notice of Violation and the issuance of the summons, (P's Opp. at 20), that delay does not suffice to show that she did not receive adequate process. *See Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (no procedural due process violation where plaintiff, who was served with appearance ticket to appear in village justice court a year after notice of violation issued, was afforded notice and opportunity for trial and appeal and had avenues to challenge deprivation of property through Article 78 proceeding). Plaintiff has not plausibly alleged any prejudice that resulted from the delay. *See DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 791 (2d Cir. 1999) (showing of actual prejudice essential element of due process claim of unconstitutional preaccusation delay). Although Plaintiff argues that had the summonses been issued sooner, the ZBA appeal would not have been necessary because the Town Justice Court would have dismissed the instruments, (AC ¶ 171), those dismissals, as already explained, do not imply, let alone prove, that Plaintiff was not in violation of the Town Code. Thus, it is not plausible that the ZBA appeal would not have been necessary had the summonses been issued earlier. And Plaintiff does not allege any other prejudice, such as the destruction of evidence or loss of witnesses during the delay. *See DeMichele*, 167 F.3d at 791 (plaintiff did not show actual prejudice where he did not show deprivation of evidence); *United States v. Delacruz*, 970 F.

13

Supp. 2d 199, 202 (S.D.N.Y. 2013) ("[S]ubstantial prejudice is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness.").

Further, according to the AC, it was Gordon (or perhaps Zitt) who issued this summons. (AC ¶¶ 63, 67.)  The AC does not plausibly allege that Ciraco was personally involved in the decision to issue the summons or the issuance of the summons itself.  And, as will be explained in more detail below, "a claim that the [Town Attorneys] took too long to commence prosecution is precisely the sort of action – the decision whether or not to prosecute – that is protected by absolute immunity."  *Willis v. Rochester Police Dep't*, No. 15-CV-6284, 2018 WL 4637378, at *10 (W.D.N.Y. Sept. 27, 2018).

"While Plaintiff[] may express [her] dissatisfaction with the outcome of [her] interactions with Defendants, procedural due process guarantees only a process, not a specific outcome." *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 203 (E.D.N.Y. 2018); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 88 (2d Cir. 2000) ("It is black-letter law that due process guarantees a fair *hearing, not* a legally correct *outcome*.") (emphasis in original) (collecting cases).  Accordingly, Plaintiff has failed to state a plausible claim for a violation of procedural due process, and that portion of Count One is dismissed.

### 2.    Takings Claim

Plaintiff also brings a takings claim against Ciraco and the Town.  (AC ¶ 122.)  "To state a takings claim under Section 1983, a plaintiff must show (1) a property interest (2) that has been taken under color of state law (3) without just compensation."  *O'Shea v. City of Kingston*, No. 22-CV-666, 2023 WL 4105492, at *4 (N.D.N.Y. June 21, 2023).

Plaintiff alleges that the Town's enforcement actions deprived Plaintiff of economically beneficial use of her property and $52,800 in rental income, and effectively downzoned her

parcel, causing a $2 million reduction in market value without compensation or legitimate authority.  (P's Opp. at 21.)  This claim is of a non-categorical regulatory taking, because Plaintiff does not allege the complete elimination of value or a total loss.  *See Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) ("This case concerns a regulatory taking, which occurs when the government acts in a regulatory capacity."); *Lewis v. City of N.Y.*, 762 F. Supp. 3d 290, 304 (S.D.N.Y. 2025) ("[G]overnment action that does not entail a physical occupation, but merely affects the use and value of private property is considered under the framework of regulatory takings."); *Dean v. Town of Hempstead*, No. 14-CV-4951, 2024 WL 3849688, at *23 (E.D.N.Y. Aug. 16, 2024) ("[A]nything less than a complete elimination of value, or a total loss, is a non-categorical taking.").

> In determining whether a use restriction effects a taking, [courts] apply the balancing test set out in *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104 (1978).  *Penn Central* instructs courts to engage in a flexible, ad hoc, factual inquiry focused on several factors that have particular significance.  Three of them are: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action.

*335-7 LLC v. City of N.Y.*, No. 21-823, 2023 WL 2291511, at *2 (2d Cir. Mar. 1, 2023).

Turning to the first factor, "[m]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking under the first *Penn Central* factor."  *Dean*, 2024 WL 3849688, at *25; *see S. Nassau Bldg. Corp. v. Town Bd. of Town of Hempstead*, 624 F. Supp. 3d 261, 275 (E.D.N.Y. 2022) ("[A] reduction in the value of property is not necessarily equated with a taking.").  Thus, that Plaintiff's property has suffered diminution in value does not establish a taking.  *See Massari v. Paulryerse*, No. 23-CV-446, 2025 WL 1788088, at *11 (W.D.N.Y. Feb. 4, 2025) (dismissing takings claim even where complaint alleged defendants' actions resulted in significant reduction in fair market value of property), *report and*

15

*recommendation adopted sub nom. Massari v. Ryerse*, No. 23-CV-446, 2025 WL 1785752 (W.D.N.Y. June 27, 2025).

"In addition, the prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred." *Dean*, 2024 WL 3849688, at \*25; *see Kabrovski v. City of Rochester*, 149 F. Supp. 3d 413, 425 (W.D.N.Y. 2015). Thus, Plaintiff's inability to rent a portion of the property also does not in and of itself amount to a taking. *See Martin v. Town of Simsbury*, 505 F. Supp. 3d 116, 131 (D. Conn. 2020) (inability to build single-family residence on property did not alone create taking because other economically beneficial uses of property existed), *aff'd*, No. 20-4266, 2022 WL 244084 (2d Cir. Jan. 27, 2022). "Rather, in determining the economic impact of a regulation, courts often consider whether the challenged action prevented the plaintiff from making *any* economic use of his property." *Dean*, 2024 WL 3849688, at \*25 (emphasis added). When considering this question, courts analyze "the parcel as a whole, including the portions of the property not subject to restriction." *Yu v. Inc. Vill. of Oyster Bay Cove*, 579 F. Supp. 3d 391, 400 (E.D.N.Y. 2022); *see DC3, LLC v. Town of Geneva*, 783 F. Supp. 2d 418, 422 (W.D.N.Y. 2011) ("Determination of whether the property has been completely devalued requires analysis of the property as a whole: it does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated."). Here, Plaintiff does not allege that she cannot make any economic use of her property, and, even if she did, it would not be plausible, given that she has a pre-existing cottage on the property that she likely could rent. Plaintiff also has the main house, which she can still use as a residence or sell for someone else to use. *See S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 276 (first *Penn Central* factor weighed in favor of Town where property remained marketable because plaintiff could sell it despite diminution in value); *Yu*, 579 F. Supp.

3d at 399 (no taking where regulatory action did not effectively deprive plaintiff of any economic use of property because property could still be used as residence).  Thus, the first factor weighs in favor of Defendants.

The second factor – whether a regulatory action "has upset plaintiff's investment-backed economic expectations by altering its rights as to a constitutionally protected property interest." *S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 276 – also favors Defendants.  Plaintiff did not have a constitutionally protected property interest in the zoning classification of her parcel, because "under New York law . . . a landowner has no vested interest in the existing classification of his property." *See id.* at 277.  Further, the investment-backed expectations must exist at the time Plaintiff purchased the property, as she must demonstrate she bought the property in reliance on a state of affairs that did not include the challenged regulatory regime.  *Id.* at 276; *see La. Mgmt. Co. v. City of Saratoga Springs*, No. 24-CV-1017, 2025 WL 915753, at *10 (N.D.N.Y. Mar. 26, 2025) ("The critical time for considering investment-backed expectations is the time a property is acquired, not the time the challenged regulation is enacted.").  But Plaintiff does not allege when she bought the property or that she relied on any particular regulations when she did so. *See Lewis*, 762 F. Supp. 3d at 305 n.5 (plaintiff failed to state non-categorical taking in part because complaint did not allege that plaintiff purchased property with expectation that he could always use property as it was); *Ruotolo v. Town of New Paltz*, No. 22-CV-169, 2023 WL 2500655, at *21 (N.D.N.Y. Mar. 14, 2023) (plaintiff failed to adequately allege takings claim against town where he failed to allege he purchased properties in reliance on a state of affairs that did not include the challenged regulatory regime), *appeal dismissed by* 2023 WL 6890838 (2d Cir. Sept. 27, 2023).

"Because Plaintiff cannot prevail on a regulatory takings claim without plausibly alleging the first two *Penn Central* factors, Plaintiff fails to adequately plead a Section 1983 Takings Clause claim against [Defendants]." *Ruotolo*, 2023 WL 2500655, at *21.[12]  Accordingly, the takings claim in Count One is also dismissed.

### C.    Count Two

Plaintiff alleges that Defendants Ciraco and the Town violated her procedural and substantive due process rights by arbitrarily denying her a building permit based on a misapplication of Town Code § 125-12.  (AC ¶¶ 132-41; *see* P's Opp. at 23.)  Defendants argue that the issues that form the basis of this claim are precluded by the Article 78 decision, and that Plaintiff fails to state a claim for procedural due process because she does not have a protected property interest.  (D's Mem. at 6-13.)  Plaintiff argues that this issue is distinct from that decided in the Article 78 proceeding in which she challenged a subsequent ZBA decision on different grounds, (AC ¶ 141), and that she has a protected interest in the right to apply for and receive a permit, (P's Opp. at 24).

#### 1.    Procedural Due Process

Beginning with Defendants' argument that Plaintiff does not have a protected property interest, "[w]hen an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis." *Potter v. Inc. Vill. of Ocean Beach*, No. 23-CV-6456, 2024 WL 3344041, at *4 (E.D.N.Y. July 9, 2024), *aff'd*, No. 24-2033, 2025 WL 1077405 (2d

---

[12] And "[e]ven if Plaintiff had sufficiently [pleaded] a taking under the Constitution, it is doubtful [s]he could assert such a claim against the individual defendant[] [Ciraco]," as "only governmental entities, and not individuals, can be liable for takings violations." *Massari*, 2025 WL 1788088, at 11 n.12.

Cir. Apr. 10, 2025).  The focus of the analysis is on "whether the applicant has a clear

entitlement to the approval sought from the government official or administrative body."  *Id.*  A

legitimate claim of entitlement exists where

> absent the alleged denial of due process, there is either a certainty or a very strong
> likelihood that the application would have been granted.  Otherwise the
> application would amount to a mere unilateral expectancy not rising to the level
> of a property right guaranteed against deprivation by the Fourteenth Amendment.

*Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985).  "This test focuses on the

amount of discretion committed to the issuing authority, not the estimated probability that the

authority would act favorably in a particular case."  *Walz v. Town of Smithtown*, 46 F.3d 162,

168 (2d Cir. 1995); *see RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir.

1989) (same).  Thus, "where the deciding authority has the ability to exercise discretion in

considering the merits of an application, there is simply no interest for process to protect."

*Harper*, 2025 WL 2653673, at *7.  And "the fact that [a] permit could have been denied on non-

arbitrary grounds defeats the federal due process claim."  *Walz*, 46 F.3d at 168; *see RRI Realty

Corp.*, 870 F.2d at 918 ("[T]he opportunity of the local agency to deny issuance suffices to

defeat the existence of a federally protected property interest.").[13]

Here, Defendants argue that Ciraco had discretion to issue building permits under

Bedford Town Code § 59-4(B), and therefore Plaintiff does not have a protected property interest

in the permit.  (Ds' Mem. at 11-12.)  Bedford Town Code § 59-4(A) states, "[T]he Building

---

[13] Some of the Second Circuit case law on this point, including *Walz* and *RRI Realty Corp.*, apply this framework in the context of a substantive due process claim, but the same framework applies to procedural due process claims, like the one asserted here.  *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) (plaintiffs unable to state actionable claim for deprivation of procedural due process in absence of property interest where defendants had discretion in determining whether to grant or deny building permits and variances); *Harper*, 2025 WL 2653673, at *7 (applying legal entitlement test to procedural due process claim).

Inspector, or their duly authorized designee, shall exercise the following powers and duties:  To receive, review, and approve or deny applications for building permits."  Bedford Town Code § 59-4(B) states that the Building Inspector has the authority to "issue building permits, certificates of occupancy, temporary certificates and operating permits, and to include therein such terms and conditions as the Building Inspector, or their duly authorized designee, may deem appropriate."  But Town Code § 59-8(E) provides that the Building Inspector shall examine building permit applications to determine whether the proposed work is in compliance with the applicable requirements of the Uniform Code and all local laws and regulations, and "shall issue a building permit" if the proposed work is in compliance.  Bedford Town Code § 59-8(E).  This last provision limits the Building Inspector's discretion once he has made a determination of compliance or non-compliance.  *See Walz*, 46 F.3d at 168 (finding discretion circumscribed where local law specified that permit shall be issued upon compliance with local law requirements); *Cunney v. Bd. of Trs. of Vill. of Grand View*, 56 F. Supp. 3d 470, 496 (S.D.N.Y. 2014) (zoning law limited building inspector's discretion where it provided he "shall issue" a certificate after finding compliance); *cf. Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 369 (S.D.N.Y. 2011) (permissive language like "may" indicates discretion as opposed to language providing inspector "shall" take particular action).

But the Town Code does grant the Building Inspector some discretion, as it does not define how he must determine whether the proposed work is in compliance with all applicable requirements and laws.  *See* Bedford Town Code § 59-8(C), (E); *see also Cunney*, 56 F. Supp. 3d at 497 (building inspector had discretion to make determination of conformity or non-conformity under village laws where laws did not define how inspector was to make determination or whether he must find building was constructed in accordance with laws in any specific context).

20

"Courts in this Circuit have found similar levels of discretion sufficient to deny a claim of entitlement to a permit where the agency is tasked with determining an application's compliance with applicable laws and regulations – even where, upon a showing of compliance, the issuance of the permit is mandatory." *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *11 (S.D.N.Y. Feb. 28, 2020); *see Cunney*, 56 F. Supp. 3d at 497, 499 (degree of discretion accorded to building inspector to determine whether house was built in accordance with plan sufficient to defeat plaintiff's property interest in certificate); *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 97-98 (W.D.N.Y. 2009) (granting motion to dismiss where substantially similar town code granted building inspector discretion to determine whether application conformed with requirements).  Thus, Plaintiff cannot show a legal entitlement to the permit and has no protected property interest.

Additionally, as explained with respect to Count One, Plaintiff's procedural due process claim also fails because she received adequate process.  Even if Plaintiff had sufficiently alleged a property interest, Plaintiff received a hearing before the ZBA at which she had the opportunity to speak and present evidence, an Article 78 proceeding before the Westchester County Supreme Court in which she was able to brief the relevant issues, and an appeal to the Appellate Division in which she once again briefed the issues and argued before the Second Department, (AC ¶¶ 36, 39, 62, 69, 71), all of which constitutes a sufficient post-deprivation remedy to preclude her due process claim, *see Underhill Land, LLC*, 2025 WL 2793756, at *6; *Vanderveer*, 2020 WL 7042669, at *6; *Ahmed*, 7 F. Supp. 3d at 254.[14]

---

[14] Plaintiff suggests her claim attacks Ciraco's reliance on § 125-12, whereas the Article 78 proceeding attacked the ZBA's final decision that relied on other grounds.  (AC ¶ 141.)  As noted below, *see infra* pages 23-24, the Article 78 proceeding addressed both provisions.  But even it had not, if the ZBA's final decision relied on other grounds, it is hard to see how Plaintiff

### 2.    Substantive Due Process

Plaintiff likewise fails to plausibly plead that Defendants violated her substantive due process rights, for two reasons.  First, as explained above, Plaintiff fails to state a property interest in the permit because Ciraco had discretion to deny it.  *See, e.g.*, *RRI Realty Corp.*, 870 F.2d at 914, 919-20 (applying legal entitlement test to substantive due process claim); *Marom*, 2020 WL 978514, at *11 (to prevail on substantive due process claim, plaintiff must demonstrate valid property interest).  Second, Plaintiff is precluded by the Article 78 proceedings from relitigating the other element of her substantive due process claim.

"Collateral estoppel, also known as issue preclusion, provides that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit."  *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *7 (S.D.N.Y. Feb. 14, 2018).  Federal courts are "bound to give the same preclusive effect to state court judgments as they are afforded by the courts of the State of New York."  *Sacher v. Vill. of Old Brookville*, 967 F. Supp. 2d 663, 669 (E.D.N.Y. 2013); *see VDARE Found., Inc. v. James*, 162, F.4th 77, 83 (2d Cir. 2025).  Under New York law, "[c]ollateral estoppel will preclude a court from deciding an issue where (1) the issue in question was actually

_____

could have been injured by any earlier reliance on § 125-12, even if it was incorrect.  Moreover, even if there was some harm, Plaintiff "was free to bring an Article 78 mandamus proceeding in New York State court" attacking that earlier reliance, and "[h]aving failed to avail h[er]self of that remedy, [she] cannot now be heard to complain of a denial of procedural due process." *Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013) (summary order); *see Segal v. City of N.Y.*, 459 F.3d 207, 218 n.10 (2d Cir. 2006) ("[W]here, as here, the plaintiff had available *adequate* process, she cannot be said to have been deprived of due process simply because she failed to avail herself of the opportunity.") (emphasis in original); *Corsini v. City of N.Y.*, No. 20-CV-5459, 2023 WL 4420113, at *8 (E.D.N.Y. July 10, 2023) ("[T]he Second Circuit frequently affirms the dismissal of procedural due process claims brought by plaintiffs who had an Article 78 proceeding available to them."), *aff'd*, No. 23-1065-CV, 2024 WL 2270130 (2d Cir. May 20, 2024).

22

and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Franza*, 2018 WL 914782, at *7. This doctrine applies in Section 1983 cases. *See Sacher*, 967 F. Supp. 2d at 669.

Plaintiff argues issue preclusion does not apply because her claims were not actually and necessarily decided in a prior proceeding. (P's Opp. at 17-18, 23.) But while the same *claims* were not decided, the *issues* that underlie them were. To make out a substantive due process claim, Plaintiff would have to plausibly plead that "the defendants infringed on the property right in an arbitrary or irrational manner." *Marom*, 2020 WL 978514, at *11. Indeed, that is what Plaintiff alleges here. (AC ¶ 161; P's Opp. at 26.) But that is also what Judge Fufidio decided: that the ZBA did not act arbitrarily or irrationally in denying Plaintiff's variance application. (ECF No. 45-2 at 5 ("The ZBA's decision to deny her application . . . was not irrational."); *see id.* at 1 ("Petitioner essentially alleges that the ZBA acted arbitrarily and capriciously in denying her variance application and for not dismissing town code violations . . . .").) The Appellate Division, Second Department then affirmed that decision on appeal, finding that "the ZBA's interpretation of the relevant provisions of the Code of the Town of Bedford was neither unreasonable nor irrational." *See Matter of Hammer v. Town of Bedford New York*, 240 N.Y.S.3d 204, 206 (N.Y. App. Div. 2d Dep't Oct. 1, 2025). It does not matter that the Article 78 court did not determine whether the denial violated her constitutional rights. (*See* P's Opp. at 28.) It decided the issue of whether the ZBA acted arbitrarily, and that issue is a necessary component of her constitutional claim now before me. *See Underhill Land, LLC*, 2025 WL 2793756, at *6 (Article 78 court decided core issue necessary to resolve substantive due process claim – whether town's actions had rational basis – and thus claim barred by collateral estoppel).

23

Although Plaintiff argues the Article 78 court "dealt with a different code BTC 125-79-1A," (P's Opp. at 23), it quite plainly addressed multiple sections of the Town Code, including § 125-12, (*see* ECF No. 45-2 at 4-5).  Thus, Plaintiff's argument is without merit, and this issue was necessarily decided.

Plaintiff further argues that she did not have the opportunity to fairly and fully litigate the issues because the court did not permit her to present testimony, offer evidence, or receive findings of fact or law on the record, (P's Opp. at 18), but this is not plausible.  "[T]he lack of a full hearing . . . is not dispositive." *Thomas v. Venditto*, 925 F. Supp. 2d 352, 361 (E.D.N.Y. 2013); *cf. VDARE*, 162 F.4th at 86 (procedural differences including lack of full evidentiary hearing irrelevant for claim preclusion purposes).  And Plaintiff's statement that she did not get to offer evidence is disingenuous, as a review of the docket reveals that Plaintiff submitted thirteen exhibits with the Article 78 Petition itself, *see Hammer v. Town of Bedford New York*, Index No. 71446/2023, Dkt. Nos. 3-15, and then submitted supplemental exhibits, *id.* at Dkt. Nos. 29, 56, and at least nine letters, some of which discussed the exhibits and represented that they were to be considered as part of her reply brief, *see, e.g.*, *id.* at Dkt. Nos. 61 at 2, 63.[15] Judge Fufidio made it clear that he considered all of Plaintiff's submissions in his ruling.  (*See* ECF No. 45-2 at 2 (noting court considered ECF items 1-96).)

---

[15] The Court may take judicial notice of the filings in the Article 78 proceeding as well as the Appellate Division's decision cited above.  *See Glob. Leadership Found. v. City of N.Y.*, No. 22-2095, 2023 WL 3144043, at *1 n.1 (2d Cir. Apr. 28, 2023) (taking judicial notice of publicly available docket for plaintiff's Article 78 petition); *Robbins v. Candy Digit. Inc.*, No. 23-CV-10619, 2025 WL 2391039, at *2 n.1 (S.D.N.Y. Aug. 18, 2025) (taking judicial notice of plaintiff's filings and decisions before different body); *Pepin v. N.Y.C. Dep't of Educ.*, No. 14-CV-9657, 2016 WL 915298, at *1 n.1 (S.D.N.Y. Mar. 4, 2016) (taking judicial notice of documents filed in connection with Article 78 petition), *aff'd*, 671 F. App'x 18 (2d Cir. 2016); *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 319-20 (E.D.N.Y. 2013) (referring to plaintiff's filings in another action to determine whether plaintiff fully and fairly litigated issues).

Additionally, the briefing before the Article 78 court included Plaintiff's reply to the Town's opposition papers, which reply was filed after the December 8, 2023 resolution was issued. Thus, although Plaintiff alleges that she lacked a full and fair opportunity to litigate because Judge Fufidio improperly considered the December 8 resolution that came after she had filed her Article 78 Petition, (P's Opp. at 18), to the extent that the Town's explanations in the resolution differed from the reasons provided at the November hearing, Plaintiff had the opportunity to address that issue in her reply, and to attack it in her appeal to the Second Department. And the Article 78 court noted in its decision that it "address[ed] the decisions made in the [November 2] hearing itself to the extent that they differ from those in the [December 8] resolution." (ECF No. 45-2 at 3.)

Further, Plaintiff advanced in both her Petition and reply the same issues present here: that the ZBA decision effectively rezoned her property, did not comply with Town Code § 125-12, was arbitrary and capricious, was improperly founded on an inference, and erroneously relied on § 125-79.1A. *See* Article 78 Petition, *Hammer v. Town of Bedford New York*, Index No. 71446/2023, Dkt. No. 1; Petitioner's Reply, *Hammer v. Town of Bedford New York*, Index No. 71446/2023, Dkt. No. 59; *see also Bristol v. Town of Camden*, No. 22-CV-845, 2024 WL 2722383, at *4 (N.D.N.Y. May 28, 2024) (plaintiff had a full and fair opportunity to litigate claims regarding zoning decision in Article 78 proceeding where petition described facts at issue similar to allegations in federal action). Plaintiff then had the opportunity to brief the issues (including those relating to the December 8 resolution) again and argue before the Appellate Division. (AC ¶¶ 62, 69, 77.) Thus, it is not plausible that Plaintiff did not have a full and fair opportunity to litigate the relevant issues. *See Marentette v. City of Canandaigua*, 351 F. Supp. 3d 410, 421-22 (W.D.N.Y. 2019) (rejecting argument plaintiff deprived of full and fair

opportunity to litigate claims raised in Article 78 proceedings where plaintiff submitted petition that was fully briefed and argued before Fourth Department) (collecting cases), *appeal dismissed*, 799 F. App'x 48 (2d Cir. 2020); *Franza*, 2018 WL 914782, at *9 (not plausible that plaintiff denied full and fair opportunity to litigate where plaintiff submitted petition with full briefing and reply to opposition papers); *Fortunatus v. Clinton County*, 937 F. Supp. 2d 320, 332 (N.D.N.Y. 2013) (submission of lengthy petition, sworn affidavits, exhibits, and memorandum of law in support of claims substantiated full opportunity to litigate).

Further, Judge Fufidio's decision reflects that in rendering his decision, he examined all items filed, which, the Court notes, included the briefing, Plaintiff's and the Town's exhibits, and Plaintiff's additional letters. (*See* ECF No. 45-2 at 2.) Judge Fufidio then issued a detailed written opinion. (*See generally id.*) Thus, the combination of the proceedings before the Article 78 court and the Appellate Division provided Plaintiff a full and fair opportunity to present her claims. *See Bristol*, 2024 WL 2722383, at *4 (plaintiff had a full and fair opportunity to litigate claims regarding zoning decision in Article 78 proceeding where judge's decision reflected that court examined full record and issued detailed opinion); *Featherstone v. Cornell Univ.*, No. 17-CV-565, 2017 WL 4736738, at *3 (N.D.N.Y. Oct. 19, 2017) (combination of proceedings provided Plaintiff full and fair opportunity to litigate). As such, Plaintiff is precluded from re-arguing the issues before the Article 78 court, including whether the Defendants arbitrarily denied her a building permit.

Because she cannot argue that Defendants denied her a building permit arbitrarily, Plaintiff cannot make out a claim for violation of substantive due process, and that claim is dismissed. Accordingly, Count Two is dismissed.

26

### D.    Count Three

Plaintiff alleges that her Fourteenth Amendment due process rights were violated by Defendant Ciraco's delay in issuing a written permit denial, which also violated New York Town Law § 267-a(5).  (AC ¶¶ 143-55.)  Defendants argue that this cause of action should be dismissed because a violation of state law is not cognizable under § 1983 and Plaintiff has failed to plausibly plead facts suggesting she was deprived of due process.  (Ds' Mem. at 14-15.)  First, Defendants are correct that a violation of Town Law § 267-a(5) alone does not make an official liable under § 1983.  *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985) ("[A] violation of state law is not cognizable under § 1983."); *Reich v. City of N.Y.*, No. 19-CV-6491, 2021 WL 6423983, at *3 (E.D.N.Y. Oct. 5, 2021) (to prevail on section 1983 claim, plaintiff must plead violation of federal law; violations of state law not actionable), *report and recommendation adopted*, 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021).  But Plaintiff also alleges that the state law violation obstructed her ability to file a timely zoning appeal and deprived her of timely access to appellate procedures, which violated her constitutional rights.  (AC ¶¶ 146, 148; P's Opp. at 25-26.)

As already explained, to succeed on a claim for procedural due process, Plaintiff must plead a protected property interest.  Plaintiff argues that she has done so in the form of the use of her property and her statutory right to appeal a permit denial.  (P's Opp. at 25.)  The right to appeal, however, is not a property interest protected by the Fourteenth Amendment.  *See N.Y. State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001) ("Process is not an end in itself.  Its constitutional purpose is to protect a *substantive interest* to which the individual has a legitimate claim of entitlement.") (emphasis in original); *Fusco v. State of Connecticut*, 815 F.2d 201, 205-06 (2d Cir. 1987) ("The opportunity granted abutting landowners and aggrieved

27

persons to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amendment."); *see also Montgomery v. Carter County, Tennessee,* 226 F.3d 758, 768 (6th Cir. 2000) ("What the Due Process clauses of the Fifth and Fourteenth Amendments protect is life, liberty, and property, not the procedures designed to protect life, liberty, and property.").

And even assuming that Plaintiff had a protected interest in the use of her property, as already explained she fails to state a procedural due process claim because she received adequate process.  She also had relief available to her to address the delay specifically, as she could have sought mandamus in an Article 78 proceeding to compel Ciraco to act.  *See C.C.S.com USA, Inc. v. Gerhauser*, 518 F. App'x 1, 3-4 (2d Cir. 2013) (summary order) (plaintiff could not demonstrate denial of due process in town's delay in granting correction to certificate of occupancy where plaintiff never pursued Article 78 hearing to compel town's decision); *Nenninger*, 509 F. App'x at 39 n.2 ("To the extent [plaintiff] argues that a failure to rule on his application – complete or incomplete – denied him procedural due process, the claim fails in any event because [plaintiff] was free to bring an Article 78 mandamus proceeding in New York State court."); *N.Y. State Nat'l Org. for Women*, 261 F.3d at 168-69 (no procedural due process violation arising from delay in processing administrative complaints because Article 78 process could have been invoked before prejudice arose); *Orange Lake Assocs. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir. 1994) (suggesting plaintiff could have sought judicial review by way of Article 78 action to address delay); *see also Tall Trees Const. Corp. v. Zoning Bd. of Appeals of Town of Huntington*, 97 N.Y.2d 86, 89-90 (2001) (explaining that after zoning board failed to vote on plaintiff's application after repeated requests for compliance, plaintiff commenced Article 78 contempt proceeding against board); *River Park, Inc. v. City of Highland Park*, 23

28

F.3d 164, 167 (7th Cir. 1994) (plaintiff had ample means to contest runaround it was receiving from city including by writ of certiorari).  Thus, the delay cannot sustain Plaintiff's procedural due process claim.

Accordingly, Count Three is dismissed.

### E.    <u>Count Four</u>

Plaintiff alleges that Defendants violated her rights under the Fifth, Sixth, and Fourteenth Amendments by denying her application for construction permits under Bedford Town Code § 125-79.1(A) based on an allegedly erroneous and arbitrary interpretation of that provision.  The Court is not sure what claim Plaintiff could conceivably assert under the Sixth Amendment here, but her substantive due process claim fails because, as previously explained, she is precluded from rearguing the issues underlying that claim, including whether Defendants acted arbitrarily.

In her brief, Plaintiff argues that she has stated a takings claim under Count Four, (*see* P's Opp. at 27-28), even though no such allegation appears in the AC.  In any event, she would fail to state a takings claim for the reasons explained with respect to Count One.  *See supra* Section III.B.2.  Accordingly, Count Four is dismissed in its entirety.

### F.    <u>Count Five</u>

Plaintiff alleges a procedural due process violation based on Defendants' fourteen-month delay between issuing the Notice of Violation and filing a summons in the Town Justice Court. (P's Opp. at 29.)  The Court is not clear on why Plaintiff seeks a ruling that would encourage municipalities to resort to criminal penalties sooner.  In any event, as already discussed with respect to Count One, Plaintiff fails to state a claim for such a violation because she received process in the form of the criminal proceedings in the Town Justice Court and the Article 78 proceeding, in which she contested the Notices of Violation, (ECF No. 45-2 at 1), and because

29

she has failed to plausibly allege prejudice that resulted from the delay. *See Lepper v. Vill. of Babylon*, No. 18-CV-7011, 2022 WL 939719, at \*20 (E.D.N.Y. Mar. 29, 2022) (no due process violation where plaintiff was sent notice of violation, had opportunity to submit permit application, and had opportunity to contest tickets in Village Justice Court and appeal the Justice Court's decision), *aff'd sub nom. Lepper v. Scordino*, No. 22-1064, 2023 WL 4004220 (2d Cir. June 15, 2023); *Dellutri*, 895 F. Supp. 2d at 575 (no procedural due process violation where plaintiff, who was served with appearance ticket to appear in village justice court a year after notice of violation issued, was afforded notice and opportunity for trial and appeal and had avenues to challenge deprivation of property through Article 78 proceeding).

Accordingly, Count Five is dismissed.

### G.    Count Six

Plaintiff alleges a substantive due process violation based on the ZBA's allegedly "arbitrary and irrational denial of her permit application under BTC § 125-79.1A."  (P's Opp. at 31.)  This claim must be dismissed for the same reason as explained with respect to Counts Two and Four:  Plaintiff is precluded by the Article 78 proceedings from arguing that the ZBA's denial of her permit was arbitrary or irrational.  Additionally, although the ZBA is not the proper defendant here, it is worth noting that the ZBA also has discretion to grant or deny permits and to make any such order or decision as "in its opinion" ought to be made, *see* Bedford Town Code § 125-129, and thus Plaintiff cannot plausibly allege a legal entitlement to the permit.

Accordingly, Count Six is dismissed.

### H.    Count Seven

Plaintiff next alleges a substantive due process violation and unlawful taking based on the ZBA's November 2, 2023 decision that amounted to "de facto downzoning."  (P's Opp. at 33;

30

AC ¶ 188.)  As already explained with respect to Counts Two, Four, and Six, Plaintiff fails to state a substantive due process claim based on the denial of permits because the Article 78 court and Appellate Division already determined that the ZBA did not act arbitrarily or irrationally in denying the permits.  Although Plaintiff argues that this claim is distinct because the issue of *de facto* re-zoning was not the subject of the Article 78 proceeding, (AC ¶ 197), the re-zoning Plaintiff alleges is the result of the permit denial, (P's Opp. at 34 ("[T]his [permit] denial functionally imposed R2A restrictions on her R1A parcel – effectively rezoning it . . . .")).  Thus, Count Seven is not distinct from Counts Two, Four, or Six, and the substantive due process claim must be dismissed.

Further, as noted, Plaintiff did not have a constitutionally protected property interest in the zoning classification of her property, because "under New York law . . . , a landowner has no vested interest in the existing classification of his property."  *S. Nassau Bldg. Corp.*, 624 F. Supp. 3d at 277; *DC3, LLC*, 783 F. Supp. 2d at 422 ("[P]roperty owners do not possess a cognizable property interest in the zoning designation of their property.").  Therefore, for that reason, and for the reasons explained above with respect to Count One, Plaintiff fails to state a claim under the Takings Clause.

Accordingly, Count Seven is dismissed.

I.     **Count Eight**

Plaintiff alleges that the five-month delay in the ZBA hearing her appeal violated procedural due process, as the appeal was not within a meaningful time, caused lost rental income, and violated N.Y. State Town Law § 267a.  (P's Opp. at 35-37.)  Defendants argue that they did not violate Town Law § 267a, which only requires an appeal to be heard within a

reasonable time, and even if they did, that would not suffice to state a claim under § 1983. (Ds' Mem. at 16-17.)

As already explained, that the delay may have violated a provision of the Town Law does not alone suffice to state a claim under § 1983. *See Pollnow*, 757 F.2d at 501 ("[A] violation of state law is not cognizable under § 1983."); *Reich*, 2021 WL 6423983, at *3 (to prevail on section 1983 claim, plaintiff must plead violation of federal law; violations of state law are not actionable). Additionally, as discussed, Plaintiff had remedies available to her under state law to address the delay in receiving a hearing. *See Barzee v. Tyler*, No. 21-CV-902, 2022 WL 1406606, at *8 (N.D.N.Y. May 3, 2022) (Article 78 is adequate remedy in cases involving prolonged delays in governmental decision-making), *report and recommendation adopted*, 2022 WL 2079084 (N.D.N.Y. June 9, 2022); *DeMartino v. N.Y. State Dep't of Lab.*, 167 F. Supp. 3d 342, 366-67 (E.D.N.Y. 2016) (mandamus proceedings available to remedy delay and compel review as required by state law), *aff'd in part and dismissed in part*, 712 F. App'x 24 (2d Cir. 2017) (summary order); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d. 332, 345 (E.D.N.Y. 2009) (state court in Article 78 proceeding can order a hearing). And "the Second Circuit . . . has consistently determined that the availability of mandamus relief and Article 78 proceedings counsel against the finding of a due process violation." *DeMartino*, 167 F. Supp. 3d at 367.

Accordingly, Count Eight is dismissed.

### J.      Count Nine

Plaintiff alleges that the ZBA's failure to timely file the ZBA decision within five days of the November 2, 2023 hearing violated Town Law § 267a and deprived her of procedural due process because the Town altered its reasoning before filing the written decision and denied her access to judicial review within a meaningful time. (P's Opp. at 37.) Defendants argue that

Plaintiff was not deprived of a meaningful opportunity to be heard because she was able to file a timely Article 78 petition, and that even if the written resolution differed from the decision at the hearing, the Article 78 court considered both.  (Ds' Mem. at 17-18.)

Defendants are correct.  Plaintiff cannot plausibly allege that the ZBA's delay in issuing a written decision denied her access to judicial review within a meaningful time, because Plaintiff timely filed an Article 78 Petition following the November 2 hearing.  (AC ¶ 39.)  Thus, there was no delay in Plaintiff receiving judicial review.  Additionally, although Plaintiff filed the Petition before the ZBA issued the written resolution, to the extent the decision made at the hearing differed from the written decision, (*id.* ¶ 212), Plaintiff had the opportunity to brief those issues in her reply, and the Article 78 court addressed both decisions, (ECF No. 45-2 at 3), as discussed.  And, again, Plaintiff had the opportunity to address the issues raised at the hearing and in the written resolution on appeal to the Second Department.  Thus, the delay between the hearing and the written decision did not deprive Plaintiff of meaningful review.

Accordingly, Count Nine is dismissed.

### K.    Counts Ten Through Eighteen

#### 1.    Absolute Immunity Generally

Counts Ten[16] through Eighteen include as Defendants Town Attorneys Eric Gordon, Robert Zitt or both, based on their participation in the criminal proceedings against Plaintiff. They argue that they are entitled to absolute prosecutorial immunity and therefore all of those counts must be dismissed.  (Ds' Mem. at 20-21.)  Plaintiff argues they are not entitled to absolute

---

[16] In the AC, Plaintiff asserts a cause of action labeled "Cause of Action IV" for malicious prosecution under § 1983.  (AC at 48.)  The Court assumes this label was in error, as chronologically this cause of action should be Count Ten.  The Court will refer to the claim asserted in paragraphs 220-239 as Count Ten.

immunity because the attorneys are not public prosecutors, as Gordon is a contract employee and

Zitt has no formal relationship to the Town.  (P's Opp. at 40-41.)  Plaintiff also argues that the

Defendants' actions are not protected functions to which immunity applies.  (*Id.* at 41.)

> It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.  The rationale for conferring absolute immunity in such circumstances is that the public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. . . .  [A] defense of absolute immunity from a claim for damages must be upheld against a § 1983 claim that the prosecutor commenced and continued a prosecution that was within his jurisdiction but did so for purposes of retaliation, or for purely political reasons.

*Shmueli v. City of N.Y.*, 424 F.3d 231, 236-37 (2d Cir. 2005).

"Courts take a functional approach when evaluating a state prosecuting attorney's ability

to invoke absolute immunity."  *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 254 (E.D.N.Y.

2015), *reconsideration denied*, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), and *aff'd*, 678 F.

App'x 17 (2d Cir. 2017) (summary order).  In other words, immunity attaches to the function

performed, not the office itself.  *See Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir.

2009); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993).  Accordingly, "[t]o

establish immunity, the ultimate question is whether the prosecutors have carried their burden of

establishing that they were functioning as advocates when they engaged in the challenged

conduct."  *Norton*, 97 F. Supp. 3d at 254.  The conduct must be of the kind "intimately

associated with the judicial phase of the criminal process."  *Ying Jing Gan*, 996 F.2d at 530.

This includes "conduct preliminary to the initiation of a prosecution, such as whether to present a

case to a grand jury, whether to file an information, whether and when to prosecute, whether to

dismiss an indictment against particular defendants, which witnesses to call, and what other

evidence to present."  *Norton*, 97 F. Supp. 3d at 254.  It does not include, however, "those acts a

prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Stokes v. Wayne County*, No. 23-CV-6482, 2024 WL 4262276, at \*10 (W.D.N.Y. Sept. 23, 2024).

But even an attorney engaging in "prosecutorial activities intimately associated with the judicial phase of the criminal process loses the absolute immunity he would otherwise enjoy . . . if he acts without any colorable claim of authority." *Shmueli*, 424 F.3d at 237. As mentioned, Plaintiff argues that Defendants Gordon and Zitt are not protected by absolute immunity because they did not have a formal relationship with the Town or had only a contractual relationship with the Town, and thus did not have statutory authority under New York law. (P's Opp. at 40-41.) The Court construes this argument as one that the Defendants lacked a colorable claim of authority and thus acted without jurisdiction.

First, there are no facts in the AC that render it plausible that Gordon and Zitt were acting without any colorable claim of authority. In the AC, Plaintiff alleges only in conclusory fashion that Gordon went beyond the scope of traditional prosecutorial functions, engaged in administrative and investigatory conduct, and was motivated by extrajudicial considerations. (AC ¶¶ 236-38.) Plaintiff alleges essentially the same as to Zitt. (*Id.* ¶¶ 245-46.) Not only are there no facts rendering those conclusions plausible, but Plaintiff challenges whether Defendants were engaging in prosecutorial (as opposed to administrative) functions and challenges their motivations; she does not allege that they acted without authority. (*See generally* AC.) To the extent that Plaintiff argues that Defendants acted without authority *because* they allegedly initiated prosecutions against her without probable cause and for improper reasons, Plaintiff is incorrect. An official loses absolute immunity "where the defect is jurisdictional – that is, where the prosecutor acted well outside the scope of authority, rather than where the defect relates, as

35

here, to the prosecutor's motivation or the reasonableness of his official action." *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022). Accordingly, "even in the absence of probable cause, as long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation." *Id.* at 866; *see Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad *motive*, but whether the *acts* at issue are beyond the prosecutor's authority.") (emphasis in original).

There are no facts that render it plausible that either Gordon or Zitt acted without authority. First, Plaintiff's allegation in her opposition brief that the Defendants "acted beyond their legal authority," (P's Opp. at 41), is conclusory, does not appear in the AC, and does not negate Gordon's or Zitt's entitlement to absolute immunity. *See Verbeek v. Teller*, 158 F. Supp. 2d 267, 281 (E.D.N.Y. 2001) (conclusory allegations that village counsel acted outside authority, that charges were fabricated, and that there was agreement between counsel and another to fabricate charges did not negate entitlement to immunity). Second, throughout the AC, Plaintiff contradicts that assertion, as she alleges that Defendants initiated the prosecutions against her in their role as Town Counsel, (*see, e.g.*, AC ¶¶ 226 ("[Gordon] acted as Town Attorney and personally arraigned Plaintiff in Bedford Justice Court."), 242 ("[Zitt], acting as Town Attorney, filed a second criminal prosecution against Plaintiff.")), and that Gordon and Zitt were acting in concert with and/or on behalf of the Town, (*id.* ¶¶ 231 (Gordon, "acting as Town Attorney for the Town of Bedford, initiated a criminal prosecution against the Plaintiff"), 256 (alleging Zitt was acting on behalf of the Town)).

36

Plaintiff contends that Gordon and Zitt are not public prosecutors, as the Town retained their law firm's services by contract.[17]  First, she alleges the opposite in the AC.  (AC ¶ 312 (Zitt and Gordon "[a]bused their roles as public officials acting under **color of state law**") (emphasis in original)).  Second, that they were not full-time prosecutors does not mean they are not entitled to absolute immunity.  As noted, immunity attaches to the function performed, not the office, and absolute immunity protects "officials performing certain functions analogous to those of a prosecutor, including local executive officers and government attorneys, whether the enforcement proceedings they prosecute [are] civil or criminal in nature."  *Weinberg v. Vill. of Clayton, New York*, No. 17-CV-21, 2018 WL 4214363, at \*9 (N.D.N.Y. Mar. 21, 2018); *see Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at \*6 (W.D.N.Y. Sept. 12, 2023) (town attorney absolutely immune from all claims against him premised on prosecution of violations of property maintenance code), *reconsideration denied*, 2023 WL 8351889 (W.D.N.Y. Dec. 2, 2023), and *reconsideration denied*, 2024 WL 242494 (W.D.N.Y. Jan. 23, 2024); *Lepper*, 2022 WL 939719, at \*27 (rejecting argument that absolute immunity does not extend to individuals serving as village attorneys prosecuting violation of village zoning code); *Norton*, 97 F. Supp. 3d at 262 (town attorneys enjoyed absolute immunity for prosecuting plaintiff for town code violations).[18]  Thus, as Town Counsel, Gordon and Zitt enjoy absolute immunity for prosecutorial actions.

---

[17] No such allegation appears in the AC, but I infer from the AC's allegations regarding Zitt's and Gordon's law firm, (*see* AC ¶¶ 97, 100, 243, 250), that it is the case.

[18] The Town resolution that Plaintiff attached to her opposition as Exhibit 1 does not aid her, as it shows that Gordon's and Zitt's law firm was retained to provide "Attorney Services," which fairly includes prosecuting Town Code violations.  (*See* ECF No. 49-1.)

Finally, to the extent that Plaintiff argues that Gordon and Zitt lacked statutory authority to initiate the prosecutions against her, that argument is also without merit.  (*See* P's Opp. at 40-41.)  "In considering whether a given prosecution was clearly beyond the scope of [an official's] jurisdiction, or whether instead there was at least a colorable claim of authority, [courts] inquire whether any relevant criminal statute exists that may have authorized prosecution for the charged conduct."  *Anilao*, 27 F.4th at 864.  Bedford Town Code § 125-128 provides for penalties for violations of any provision of "this Chapter" – that is, Chapter 125, entitled "Zoning" – or any rule or regulation made under the authority conferred by the chapter.  *See* Bedford Town Code § 125-128.  Specifically, § 125-128(A)(1) provides that anyone who

> erect[s], construct[s], alter[s], enlarge[s], convert[s] or move[s] any building or structure or any part thereof without a building permit or in violation of any statement or plans submitted and approved . . . or who shall use any building, structure or land in violation of this chapter or any rule or regulation made under the authority conferred by this chapter, or in violation of the provisions of any building permit or certificate of occupancy . . . [and] fails to abate said violation . . . shall be liable for a fine not exceeding $500 and/or imprisonment not to exceed 15 days for conviction of a first offense . . . .

*Id.*  The Town Code goes on to explain that anyone convicted of having an illegal accessory apartment will be guilty of an unclassified misdemeanor pursuant to the Penal Law.  *See id.* § 125-128(A)(2).  Thus, the Town Code contemplates criminal prosecution for Plaintiff's alleged conduct, as she acknowledges in her AC.  (AC ¶ 223 ("Defendant Gordon caused a summons served upon Plaintiff to compel her appearance in Justice Court for alleged violations punishable by imprisonment of up to six consecutive 15-day terms, pursuant to local ordinances."); *id.* ¶ 90 ("Under New York law, zoning and building violations are penalized by fines and, where applicable, short-term incarceration.").)  Accordingly, it is not plausible that Gordon and Zitt lacked a colorable claim of authority or acted in the absence of all jurisdiction.  *See Murphy*, 2023 WL 8351889, at *3 (city attorneys did not act in clear absence of all jurisdiction where

38

New York law authorized imposition of fines and term of imprisonment for violations of building code with which plaintiff was charged); *Weinberg*, 2018 WL 4214363, at *9 (village attorneys did not act without any colorable claim of authority where village code specified remedies for violations were not exclusive, and state law provided penalties for violations of any lawful order of a local government).

Therefore, Gordon and Zitt are entitled to absolute immunity so long as they were engaging in prosecutorial functions. I address below whether the conduct alleged in each count constitutes a prosecutorial function.

### 2.    Counts Ten & Eleven

In Count Ten, Plaintiff asserts claims for malicious prosecution under the Fourth Amendment and First Amendment retaliation against Gordon and the Town. As to Gordon, Plaintiff alleges that he violated her rights by "initiating and pursuing a baseless quasi-criminal enforcement proceeding against Plaintiff for the purpose of punishing her for the exercise of protected First Amendment rights . . . ." (AC ¶ 222.) She also alleges Gordon caused a summons to be served upon Plaintiff to compel her appearance in the Town Justice Court, (*id.* ¶ 223), personally arraigned Plaintiff in the Justice Court, (*id.* ¶ 226), and issued discovery demands, (*id.* ¶ 227). This alleged conduct is prosecutorial in nature, as it is intimately associated with the judicial phase of the criminal process. *See Santulli v. Russello*, 519 F. App'x 706, 711 (2d Cir. 2013) (summary order) ("[T]he issuance of summonses is part of the prosecutorial function, having effectively initiated prosecutions for the violations alleged."); *Ying Jing Gan*, 996 F.2d at 530 (absolute immunity applies to decision whether to initiate prosecution and performance of litigation-related duties); *Abdullah v. City of N.Y.*, No. 21-CV-823, 2021 WL 810232, at *3 (E.D.N.Y. Mar. 3, 2021) ("Because the prosecutor's conduct in arraigning plaintiff

39

is intimately associated with the judicial phase of the criminal process, it is protected by absolute immunity."); *Norton*, 97 F. Supp. 3d at 262 (instituting and continuing criminal prosecutions are clear prosecutorial functions absolutely immune from suit).  Plaintiff alleges in conclusory fashion that Gordon's conduct was "investigative" and "administrative" (AC ¶¶ 236-37), but her "labeling of the prosecutor's actions . . . does not make it so."  *Watson v. Grady*, No. 09-CV-3055, 2010 WL 3835047, at \*16 (S.D.N.Y. Sept. 30, 2010); *see Crews v. County of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at \*15 n.15 (E.D.N.Y. Dec. 27, 2007) ("[P]laintiff['s] labeling various actions 'investigative' or 'administrative' in the complaint is of no moment.").  And as discussed, even if Gordon's actions were undertaken for a retaliatory purpose, or he initiated the prosecution in the absence of probable cause, that does not negate his entitlement to absolute immunity.  *See Anilao*, 27 F.4th at 866 ("[E]ven in the absence of probable cause, as long as a prosecutor acts with colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation."); *Bernard*, 356 F.3d at 504 ("Certainly, racially invidious or partisan prosecutions, pursued without probable cause, are reprehensible, but such motives do not necessarily remove conduct from the protection of absolute immunity.").

Similarly, in Count 11, Plaintiff asserts a claim of malicious prosecution against Zitt. Plaintiff brings this claim under the Fourteenth Amendment, but "the Fourteenth Amendment itself is not a sufficient Constitutional ground for a malicious prosecution claim."  *Moore v. Town of Webster*, No. 24-CV-6062, 2025 WL 1549029, at \*7 (W.D.N.Y. May 30, 2025) (collecting cases); *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 114 (2d Cir. 1995) (explaining that "the Fourteenth Amendment right to substantive due process will not support a federal claim

40

for malicious prosecution," but plaintiff may assert a federal claim for malicious prosecution under Fourth Amendment).  Thus, Count 11 is dismissed.

Plaintiff would have fared no better had she brought her malicious prosecution against Zitt under the Fourth Amendment.  She alleges that he "filed a second criminal prosecution against Plaintiff in Bedford Justice Court" in retaliation for her exercise of her First Amendment right, and despite knowing that he lacked probable cause, and that the prosecution violated the Double Jeopardy Clause.  (AC ¶¶ 241, 245, 248.)  As explained, these alleged actions are prosecutorial functions, and therefore Zitt is entitled to absolute immunity.  *See Anilao*, 27 F.4th at 866 (absolute immunity attached to prosecutorial functions regardless of motivation); *Norton*, 97 F. Supp. 3d at 262 (instituting and continuing criminal prosecutions clear prosecutorial functions absolutely immune from suit); *Lepper*, 2022 WL 939719, at \*28 (village attorney absolutely immune from plaintiff's Double Jeopardy claim); *Anilao v. Spota*, 774 F. Supp. 2d 457, 480 (E.D.N.Y. 2011) (defendants shielded from liability for decision to prosecute in retaliation for exercise of First Amendment rights), *aff'd*, 27 F.4th 855 (2d Cir. 2022).

Moreover, even if Defendants were not immune, Plaintiff fails to state a claim for malicious prosecution.  To plausibly allege a claim under § 1983 for malicious prosecution, a plaintiff must allege:  "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  *Norton*, 97 F. Supp. 3d at 262-63.  Defendants argue that dismissals without prejudice due to facial insufficiency do not suffice to show that the criminal proceedings terminated in Plaintiff's favor. (Ds' Mem. at 22.)

41

Defendants are incorrect.  Although the Second Circuit had previously held that a dismissal without prejudice for facial insufficiency does not constitute a favorable decision on the merits, *see Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999); *see also Russell v. The J. News*, 672 F. App'x 76, 78-79 (2d Cir. 2016) (summary order) (relying on *Breen*), the Supreme Court has rejected the principle behind that proposition, holding that a plaintiff asserting a malicious prosecution claim need only show that the proceeding ended without a conviction, and that an affirmative indication of innocence is not required, *see Thompson v. Clark*, 596 U.S. 36, 49 (2022); *see also Santiago v. City of Rome*, No. 24-CV-704, 2025 WL 553347, at *6 (N.D.N.Y. Feb. 16, 2025) (explaining impact of *Thompson* on malicious prosecution claims under § 1983).  Allegations that charges were dismissed for facial insufficiency "easily meet *Thompson*'s low bar" for the favorable termination element.  *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 235 (W.D.N.Y. June 30, 2022); *see Massari v. Ryerse*, No. 23-CV-446, 2024 WL 2116827, at *11 (W.D.N.Y. Mar. 28, 2024), *report and recommendation adopted*, 2024 WL 2114005 (W.D.N.Y. May 10, 2024).  Thus, Plaintiff has sufficiently pleaded the second element of her malicious prosecution claims.

Nevertheless, Plaintiff must also allege that Defendants' conduct "resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating [her] Fourth Amendment rights."  *Norton*, 97 F. Supp. 3d at 263; *see Bernshtein v. City of N.Y.,* 496 F. App'x 140, 142 (2d Cir. 2012) (summary order) (same); *Mozdziak v. Romeo*, No. 24-CV-8579, 2025 WL 3484828, at *4 (S.D.N.Y. Dec. 4, 2025) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under Section 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.'").  "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a

42

Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). But "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013). In other words, "the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure." *MacPherson v. Town of Southampton*, No. 07-CV-3497, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2023). Thus, applying *Swartz*, "[c]ourts have found a liberty deprivation, for example, where arrestees were arraigned and were subsequently required to make one other court appearance." *Price v. City of N.Y.*, No. 15-CV-5871, 2018 WL 3117507, at *8 (S.D.N.Y. June 25, 2018) (collecting cases); *Holley v. City of N.Y.*, No. 23-CV-1838, 2024 WL 3519795, at *6 (S.D.N.Y. Jan. 29, 2024) (plaintiffs stated claim for malicious prosecution where they alleged they were required to and did appear in court on multiple occasions before the charges were dropped), *report and recommendation adopted as modified by* 2024 WL 1116107 (S.D.N.Y. Mar. 14, 2024); *Hanson v. New York City*, No. 15-CV-1447, 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) (plaintiff may establish a deprivation of liberty when she is "detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in [her] travel after being released from custody, and makes at least one post-arraignment appearance before a state court"); *Gogol v. City of N.Y.*, No. 15-CV-5703, 2017 WL 3449352, at *12 (S.D.N.Y. Aug. 10, 2017) (denying summary judgment where plaintiff had one post-arraignment court appearance and was subject to travel restriction); *cf. Downing v. Town of Cicero*, No. 24-CV-643, 2025 WL 641570, at *13 (N.D.N.Y. Feb. 27, 2025)

(no seizure where plaintiff did not allege he was required to attend or did attend court during

period between arraignment and when charges were dismissed months later).[19]

Here, Plaintiff does not allege more than one court appearance, stating only "**Defendant**

**Gordon caused a summons served upon Plaintiff to compel her appearance in Justice**

**Court**," (AC ¶ 223 (emphasis in original)), and that she was arraigned on June 11, 2024 in the

first prosecution, (*id.* ¶¶ 226, 230), and on September 17, 2024 in the second, (*see* ECF No. 41-

14 at 5:11).  These allegations fall short of alleging a post-arraignment deprivation of liberty akin

to a seizure under the Fourth Amendment.  *See MacPherson*, 2013 WL 6058202, at *6 (plaintiff

failed to allege post-arraignment seizure where complaint was "bereft of allegations that

[plaintiff] was required to appear in court after his arraignment or that he did in fact appear in

court after his arraignment as a result of the criminal charges").

> Further, to the extent such facts are relevant, [s]he does not allege that [s]he was
> placed into physical custody at any time . . . , either before or after h[er]
> arraignment.  Nor does [s]he allege that [s]he was subjected to any other
> restrictions following either the issuance of the criminal summons or h[er]
> arraignment, such as on h[er] ability to travel freely.  Given that Plaintiff has not
> alleged that [s]he was restricted in any manner beyond being required to attend
> the arraignment, [s]he has not alleged a sufficiently unreasonable deprivation of
> h[er] liberty to state a claim for malicious prosecution pursuant to Section 1983.

*Downing*, 2025 WL 641570, at *13.

Additionally, I find Plaintiff has failed to plausibly plead a lack of probable cause, and

thus her claim fails on that basis as well.  Plaintiff does not allege that the apartment does not

exist, that it is not actually on the second floor of a detached garage, that it does not have a

---

[19] The "case law from this Circuit is somewhat unclear with respect to the approach
courts should take when considering this final element" of a malicious prosecution claim.
*Oxman v. Downs*, 999 F. Supp. 2d 404, 413-14 (E.D.N.Y. 2014) (explaining conflicting case law
in Second Circuit with respect to seizure element).  Nevertheless, it appears to this Court that
requiring at least one post-arraignment court appearance is the approach taken by the majority of
courts in this Circuit.

kitchen and bathroom, or that the Town issued a permit or variance allowing the recreation room to be converted into an apartment; rather, she admits those facts in the AC.  (AC ¶¶ 8, 12, 14.)  In other words, Plaintiff's disagreement is with the Town's reading of the Town Code as not allowing the apartment in the district where her property is situated.  (*See, e.g.*, *id.* ¶¶ 126-130.)  Although this issue is not necessarily precluded by Judge Fufidio's and the Appellate Division's findings that the Town's interpretation of the Town Code was reasonable, I agree with Judge Fufidio's substantive analysis of the relevant provisions of the Town Code.  Accordingly, for the reasons set forth in his decision, and in the Appellate Division's decision affirming it, "a reasonable person in the Defendants' position could have easily interpreted the Town Code in a similar fashion and, thus, would believe that the issuing and prosecution of the [Notices of Violation] was warranted."  *Oxman*, 999 F. Supp. 2d at 415 (finding as a matter of law on motion to dismiss that defendants had probable cause to pursue prosecution of plaintiff for violating town code); *Parkash v. Town of Southeast*, No. 10-CV-8098, 2011 WL 5142669, at *4 (S.D.N.Y. Sept. 30, 2011) (facts pleaded in amended complaint support inference that appearance tickets and informations issued based on probable cause as plaintiffs did not argue they ceased violative use), *aff'd*, 468 F. App'x 80 (2d Cir. 2012) (summary order).

Although Plaintiff argues that the dismissal of the prosecutions proves that there was no probable cause, (AC ¶ 230), that is incorrect, *see Lepper*, 2022 WL 939719, at *22 ("The fact that the tickets were ultimately dismissed because they failed to include sufficient factual allegations does change the fact that Defendants possessed probable [cause] to pursue this prosecution."); *Paulin v. Figlia*, 916 F. Supp. 2d 524, 531 (S.D.N.Y. 2013) ("Eventual dismissal of the charges does not affect whether there was probable cause at the time of arrest."); *Johnson v. City of Mount Vernon*, No. 10-CV-7006, 2012 WL 4466618, at *4 (S.D.N.Y. Sept. 18, 2012)

45

("The fact that charges are later dismissed does not affect whether there was probable cause at the time of arrest."). Similarly, although Plaintiff argues that Gordon's statement that the charges would likely be dismissed shows there was no probable cause, (AC ¶ 229), she does not allege that he stated that the reason for dismissal would be lack of probable cause. Further, the Court has reviewed the video from the November 2, 2024 ZBA meeting on which Plaintiff relies, (ECF No. 1-1; *see* AC ¶ 229), and only heard Gordon say, with reference to one of the violations, that Plaintiff "may be right that the court - that gets dismissed," (ECF No. 1-1 at 2:03:33). Thus, Plaintiff fails to plausibly plead a lack of probable cause.

The existence of probable cause to prosecute also defeats Plaintiff's First Amendment retaliation claim. *See Chepilko v. Henry*, 722 F. Supp. 3d 329, 346 (S.D.N.Y. 2024) ("The existence of probable cause will defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive."), *appeal dismissed*, No. 24-1059 (2d Cir. Feb. 4, 2025).

Accordingly, Counts Ten and Eleven are dismissed as to Defendants Gordon and Zitt.

### 3.    Count Twelve

Next, Plaintiff alleges that Zitt violated her Sixth Amendment right to a speedy trial and her Fourteenth Amendment due process rights by filing a second criminal prosecution against her after the statutory speedy trial period for the first had expired.[20] (AC ¶ 254.) Defendant Zitt is again entitled to absolute immunity for his actions, as Plaintiff's claim stems from his decision to initiate a prosecution, which, as discussed, is a core prosecutorial function. *See Norton*, 97 F.

---

[20] Plaintiff asserts this claim against Zitt in his official and individual capacities, (AC at 56), but any claim against Zitt, or any other individual defendant, in his official capacity is "a redundant method of stating a claim against the Town itself," *Rini v. Zwirn*, 886 F. Supp. 270, 282 (E.D.N.Y. 1995).

Supp. 3d at 262.  "This is true, even if [Defendant] violated plaintiff's . . . right to a speedy trial in the process."  *Pittman v. Edwards*, No. 20-CV-319, 2020 WL 4194479, at *4 (N.D.N.Y. June 22, 2020), *report and recommendation adopted*, 2020 WL 4192547 (N.D.N.Y. July 21, 2020); *see Blount v. Moccia*, 16-CV-4505, 2017 WL 5634680, at *8 (S.D.N.Y. Nov. 21, 2017) (dismissing Sixth Amendment speedy trial claim because steps taken to prosecute plaintiff's case entitled to absolute immunity); *Lewis v. Johnson*, No. 04-CV-3784, 2005 WL 2158806, at *2-3 (S.D.N.Y. Sept. 1, 2005) (defendant entitled to absolute immunity where plaintiff alleged prosecutor's acts deprived him of constitutional right to speedy trial because decision to initiate prosecution is clearly act for which attorney entitled to absolute immunity).

Furthermore, the claim is based entirely on Zitt's filing of the second summons on September 17, 2024, after the time for trial on the first summons under New York Criminal Procedure Law § 30.30 had run on July 11, 2024.  (*See* AC ¶¶ 254-62).  But "a violation of § 30.30 cannot be the basis of a § 1983 claim," because its limitation is statutory, not constitutional.  *Jackson v. Marshall*, No. 04-CV-3915, 2008 WL 800745, at *4 (S.D.N.Y. Mar. 25, 2008).  Finally, any constitutional speedy trial claim is baseless.  The first summons was issued on May 6, 2024 and the second was dismissed on November 12, 2024.  (*See* ECF No. 41-10; ECF No. 1-5.)  Even if that entire time were unwarranted delay, and even if it was all attributable to Zitt – neither of which is alleged – a "six-month period is simply too short to raise a substantial Sixth Amendment issue."  *United States v. Watson*, 599 F.2d 1149, 1157 (2d Cir. 1979), *opinion amended on reh'g*, 690 F.2d 15 (2d Cir. 1979), and *opinion modified on reh'g sub nom. United States v. Muse*, 633 F.2d 1041 (2d Cir. 1980); *see Kelly v. Lape*, No. 04-CV-218, 2007 WL 405856, at *3 (N.D.N.Y. Feb. 1, 2007) (ten-month delay from arrest to conviction

47

"considerably shorter than those in other cases where no Sixth Amendment speedy trial violation has been found").

Accordingly, Count Twelve is dismissed.

### 4.    Count Thirteen

Plaintiff alleges in Count Thirteen that Defendant Zitt violated her due process rights under the Fourteenth Amendment by failing to disclose *Brady* material requested by Plaintiff during her criminal proceedings.  (AC ¶¶ 264-69.)  Defendants argue that, to the extent this claim is raised against Defendants other than Zitt, the claim must be dismissed for failure to plead facts suggesting personal involvement.  (Ds' Mem. at 23.)  Defendants also argue that Gordon and Zitt are entitled to absolute immunity, and the claim must be dismissed because neither criminal proceeding resulted in a conviction of Plaintiff.  (*Id.* at 23-24.)

First, as to Zitt, against whom the claim is expressly asserted, "a prosecutor is absolutely immune from liability under § 1983 for [*Brady*] violations," *McClean v. County of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *9 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (summary order), because deciding what evidence to turn over is a prosecutorial function, *see Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995) (failure to turn over *Brady* material protected as discretionary advocacy function); *Kweller v. County of Broome*, No. 24-CV-1328, 2025 WL 2719897, at *13 (N.D.N.Y. Sept. 24, 2025) (failure to identify and disclose exculpatory evidence is advocacy function to which absolute immunity ordinarily attaches), *reconsideration denied*, 2025 WL 3280745 (N.D.N.Y. Nov. 25, 2025); *Lepper*, 2022 WL 939719, at *28 (village attorney protected by absolute immunity on *Brady* claim); *McClean*, 2018 WL 6329420, at *9 (plaintiff cannot obtain damages

under § 1983 for *Brady* violation because prosecutor absolutely immune for such violations).

Thus, Zitt is entitled to absolute immunity for the alleged failure to disclose *Brady* material.

Even if Zitt were not absolutely immune, the government has a "*Brady* obligation only

where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial."

*See Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 467 (S.D.N.Y. 2009).  To demonstrate that

deprivation, a plaintiff must show that the government suppressed evidence, the evidence at issue

is favorable to the defendant, and the failure to disclose the evidence resulted in prejudice.  *See*

*id.*; *Rindgen v. County of Broome*, No. 24-CV-1325, 2025 WL 2772080, at \*30 (N.D.N.Y. Sept.

29, 2025).  Putting aside that the allegedly withheld material, (*see* AC ¶ 266), seems to relate to

Plaintiff's beliefs regarding a conspiracy against her, as opposed to whether or not she was not

guilty of the charged zoning violations, "[c]ourts have categorically rejected denial of a right to

fair trial claims based on *Brady* violations where the plaintiff was not convicted in the underlying

criminal trial."  *McClean*, 2018 WL 6329420, at \*18; *see Rindgen*, 2025 WL 2772080, at \*31

(no § 1983 fair trial claim for alleged *Brady* violation where plaintiff was acquitted); *Ambrose*,

623 F. Supp. 2d at 471 ("[T]he verdict acquitting Plaintiff of the criminal charges against him

negates any violation of his *Brady* rights and extinguishes any Section 1983 due process claim

that might arise from Defendants' alleged suppression of exculpatory evidence.").  Relatedly, the

only timing requirement for disclosure of *Brady* material is that it "must be disclosed in time for

its effective use at trial," *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001), and "[t]here

is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the

evidence would have produced a different result at trial," *id.* at 144.  Here, Plaintiff was not

convicted, nor did she have a trial in either case, because both sets of charges were dismissed

before trial.  (AC ¶¶ 70, 74.)  Thus, Plaintiff cannot show either that Zitt, in prosecuting Plaintiff,

49

had an obligation to disclose the alleged *Brady* material, or that Plaintiff was prejudiced by the failure to disclose it. *See Brown v. Vill. of Endicott*, No. 21-CV-1186, 2025 WL 863105, at *35 (N.D.N.Y. Mar. 19, 2025) (dismissing plaintiff's § 1983 Brady claim where indictment was dismissed and, as a result, "the purpose of *Brady's* requirements was not triggered").[21]

Accordingly, Count Thirteen is dismissed.

### 5.    Counts Fourteen, Fifteen & Sixteen

Count Fourteen asserts a claim for malicious prosecution against Zitt for his actions in initiating a second prosecution against Plaintiff without probable cause. (AC ¶¶ 270-74.) Similarly, Count Fifteen purports to assert a claim for malicious prosecution against all named defendants in their individual and official capacities, but the only conduct alleged to have violated Plaintiff's rights was Zitt's initiating the second prosecution against Plaintiff. (*See id.* ¶ 278.) Both claims are duplicative of the claim asserted in Count Eleven, which I have already dismissed. Additionally, Count Sixteen purports to assert a claim for malicious prosecution against all named defendants, but the conduct alleged to have violated Plaintiff's rights is that of Defendants Gordon and Zitt in initiating two prosecutions against Plaintiff and failing to appoint a neutral special prosecutor. (*See id.* ¶¶ 285-96.) Thus, this claim is duplicative of Counts Ten and Eleven.

---

[21] In addition, to the extent Plaintiff asserts this claim against the remaining Defendants, it must be dismissed as Plaintiff has failed to plead their personal involvement. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). "Therefore, to state a claim under Section 1983 against government officials, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the constitution." *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 238 (S.D.N.Y. 2023). Plaintiff only alleges in her AC that Defendant Zitt refused to disclose the material. She does not allege any facts that render it plausible that any of the other Defendants were personally involved.

To the extent that Plaintiff believes that these claims are distinct because she also alleges that Zitt's conduct violated New York Rule of Professional Conduct 3.8 and Disciplinary Rule 7-105(A), and that Zitt's and Gordon's failure to appoint a special prosecutor violated other ethical rules, such allegations are "irrelevant" because "it is the nature of the act and not the impropriety of the act that matters" when determining the applicability of absolute immunity,[22] *see Napolitano v. Saltzman*, 315 F. App'x 351, 352 (2d Cir. 2009) (summary order), and because such violations are not actionable under § 1983, *see Hendricks v. Utica Pub. Defs.*, No. 23-CV-431, 2023 WL 3344236, at *3 (N.D.N.Y. May 10, 2023) ("[V]iolations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim . . . ."), *report and recommendation adopted*, 2023 WL 6356645 (N.D.N.Y. Sept. 29, 2023); *see also White v. Renzi*, No. 22-CV-370, 2022 WL 3646825, at *12 (N.D.N.Y. Aug. 24, 2022) (dismissing claim under ethical rules and regulations because they do not create any private rights of action), *aff'd*, 2023 WL 6205957 (2d Cir. Sept. 25, 2023) (summary order).[23]

---

[22] Although Plaintiff argues that the failure to appoint a special prosecutor is not a protected function to which immunity applies, (P's Opp. at 41), Plaintiff cites no authority for that proposition and does not explain why the conduct is administrative rather than prosecutorial. It seems to the Court that the decision whether to appoint a special prosecutor is a prosecutorial function protected by absolute immunity. *See Roper v. Hynes*, No. 05-CV-7664, 2006 WL 2773032, at *6 (S.D.N.Y. Sept. 27, 2006) ("Absolute prosecutorial immunity therefore bars [Plaintiff's] claims against [defendant district attorney] to the extent they involve conduct associated with the decision to prosecute, such as issuing a subpoena and appointing a Special Prosecutor.").

[23] Although Count Sixteen alleges a violation of Plaintiff's First Amendment rights, Plaintiff did not address Defendants' argument with respect to the First Amendment claim in her opposition, and thus she has abandoned that claim. *See Romeo & Juliette Laser Hair Removal, Inc.*, 2014 WL 4723299, at *7. In any event, she does not allege facts rendering it plausible that the failure to appoint a special prosecutor violated her rights. Although Plaintiff alleges that the appointment of a special prosecutor was "**required under the law and** ethical rules **governing prosecutorial conduct**," (AC ¶ 286) (emphasis in original), she points only to ethical rules, (*id.*

Further, although Counts Fifteen and Sixteen are asserted against all Defendants, Plaintiff failed to plead personal involvement of any Defendant other than Zitt and Gordon.  Although Plaintiff alleges that all the "Defendants acted in concert and coordination in furtherance of this malicious and retaliatory agenda," (AC ¶ 280), Plaintiff does not allege any specific conduct, and these conclusory allegations do not suffice to state a claim against the other Defendants.  And, in any case, for the reasons explained above, Plaintiff's malicious prosecution claim fails on the merits.

Accordingly, Counts Fourteen, Fifteen, and Sixteen are dismissed.

### 6. Count Seventeen

Plaintiff asserts a claim for civil conspiracy against all Defendants, alleging that they "engaged in a sustained and unlawful course of conduct with the collective intent to deprive the Plaintiff of her constitutionally protected property rights, subject her to harassment, and degrade her standing and dignity as a property owner and citizen." (AC ¶ 297.)  To support her claim, Plaintiff alleges Defendants intentionally denied her permits and filed and refiled baseless prosecutions against her. (*Id.* ¶ 302.)

"To prove a § 1983 conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 363 (S.D.N.Y. 2017).  Additionally, "[a] § 1983 conspiracy claim must be based on an underlying violation of one or more constitutional rights."

---

¶ 287).  She provides no authority for the proposition that there is a constitutional obligation to appoint a special prosecutor when the defendant creates a conflict by filing notices of claim or grievances against the prosecutor.

*One Barberry Real Est. Holding, LLC v. Maturo*, No. 17-CV-985, 2021 WL 4430599, at *21 (D. Conn. Sept. 27, 2021).  Because Plaintiff has failed to state a claim on all underlying substantive violations, the civil conspiracy claim also fails.  *See Bell v. Smith*, No. 17-CV-1357, 2018 WL 11219949, at *2 (N.D.N.Y. June 21, 2018) ("Because the amended complaint fails to state an underlying claim for relief under Section 1983, [plaintiff] cannot proceed with a claim for conspiracy to violate his constitutional rights."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("Having dismissed Plaintiff's § 1983 substantive claim, his related conspiracy claim must also be dismissed."); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *24 (N.D.N.Y. Feb. 3, 2009) (no conspiracy claim where all defendants were immune from suit and there was no constitutional violation because there was probable cause), *reconsideration denied*, 2009 WL 2567781 (N.D.N.Y. Aug. 17, 2009).

Accordingly, Count Seventeen is dismissed.

### 7.    Count Eighteen

Plaintiff also asserts a claim for malicious prosecution and violation of her due process rights based on Zitt's and Gordon's failure to disclose "controlling legal precedent directly relevant to Plaintiff's case . . . which contradicted the legal arguments advanced in their submissions to the court."  (AC ¶ 309.)  Plaintiff alleges this conduct violated New York Rule of Professional Conduct 3.3.  (*Id.* ¶ 310.)

As explained, a violation of an ethical rule is not actionable under § 1983 and cannot alone support Plaintiff's due process claim.  *See Hendricks*, 2023 WL 3344236, at *3 ("[V]iolations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim . . . .").  Plaintiff did not provide any case law establishing that the failure to provide legal precedent to the court otherwise constitutes a

53

due process violation, and the Court has found none. Moreover, the "precedent" to which Plaintiff refers is a 2017 continuing legal education document produced by Gordon's and Zitt's law firm, (AC ¶¶ 308-09; ECF No. 41-13), which hardly constitutes "precedent" even under the ethical rules. To the extent that Plaintiff argues this "precedent" shows that the prosecutions that Gordon and Zitt pursued against her were baseless, (AC ¶¶ 310, 312), Gordon and Zitt are, as discussed, absolutely immune for their conduct in pursuing the prosecutions against Plaintiff, and Plaintiff fails to state a claim for malicious prosecution.

Accordingly, Count Eighteen is dismissed.

## L.    Municipal Liability under *Monell*

Finally, Plaintiff asserts several claims against the Town explicitly, alleges that the Town was acting in concert with the other Defendants on many of her other claims, and asserts claims against town officials in their official capacities, which are construed as claims against the Town. *See Kendrick v. Town of Winchester/City of Winsted*, 11 F. Supp. 2d 212, 215 (D. Conn. 1998) ("[I]n official capacity suits, the real party in interest is the government entity or municipality, and not the officer himself.").

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Under *Monell*, to state a claim against a municipality under § 1983 based on the acts of a public official, "a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). To satisfy the fifth element, a plaintiff may assert:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014).

Any immunity that would cover the individual defendants, like the absolute immunity applicable to Gordon and Zitt, does not shield the Town from suit. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("'[M]unicipalities have no immunity from damages for liability flowing from their constitutional violations.'") (quoting *Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980)). Thus, even though I dismissed the claims asserted against Gordon and Zitt on the basis of absolute immunity, that alone does not extinguish the claims against the Town. *See Garcia v. Bloomberg*, No. 11-CV-6957, 2015 WL 5444122, at *2 (S.D.N.Y. Sept. 10, 2015) ("A plaintiff may assert municipal liability claims under *Monell* even if individual municipal actors are entitled to qualified immunity."), *aff'd*, 662 F. App'x 50 (2d Cir. 2016) (summary order).

But there can be no *Monell* liability where the underlying constitutional claims do not survive. *See Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at *10 (S.D.N.Y. Apr. 28, 2020); *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors."). Here, as explained above, not only are the Town's officials immune from suit for their actions, but Plaintiff has also failed to state a claim for any constitutional violation for other reasons. Therefore, because no underlying

constitutional claims survive on the merits, there is no underlying claim against the Town for which it could be liable, and Plaintiff's *Monell* claim fails. *See Mastromonaco v. County of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.") (summary order); *Rakchi v. City of N.Y.*, No. 24-CV-1312, 2025 WL 2711237, at *4 (E.D.N.Y. Sept. 22, 2025) (no *Monell* claims premised upon substantive due process violation where court found plaintiff failed to state claim for such violation); *Oquendo v. City of N.Y.*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) (dismissing plaintiff's *Monell* claim on motion to dismiss where there was no constitutional violation); *Yousef*, 2020 WL 2037177, at *10 (no need to address *Monell* liability because underlying claim did not survive).[24]

Accordingly, all claims against the Town are dismissed.

## IV.    LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint once, (ECF No. 41), after having the benefit of Defendants' pre-motion letter, (ECF No. 16), and the discussion at the pre-motion conference, (*see* Minute Entry dated May 30, 2025). In general, a plaintiff's failure to fix deficiencies in the

---

[24] Additionally, because I dismissed Plaintiff's claims on other grounds, I need not address Defendants' qualified immunity argument as to Defendant Ciraco. (*See* Ds' Mem. at 24-25.)

previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion in denying leave to amend where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this decision. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could—or would—provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication

as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at \*21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendants'] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 44), and close the case.

**SO ORDERED.**

Dated:  January 13, 2026
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

58