UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
MELANIE HAMMER,

                                        Plaintiff,

        - against -

TOWN OF BEDFORD NEW YORK, DEPARTMENT
OF BUILDING BEDFORD NEW YORK, ZONING
BOARD OF APPEALS BEDFORD NEW YORK,
BUILDING INSPECTOR TOWN OF BEDFORD NEW
YORK (ALBERT CIRACO), ATTORNEY FOR THE
TOWN OF BEDFORD NEW YORK (ERIC GORDON,
ESQ. & ROBERT ZITT, ESQ.),

                                        Defendants.
----------------------------------------------------------------------x

**OPINION & ORDER**

No. 25-CV-2618 (CS)

Appearances:

Melanie Hammer
Brooklyn, New York
*Pro Se Plaintiff*

Gerald S. Smith
Silverman & Associates
White Plains, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court are Plaintiff's motions to vacate pursuant to Federal Rule of Civil

Procedure 60(b), (ECF No. 67), and for *in camera* review, (ECF No. 69).  For the following

reasons, Plaintiff's motions are DENIED.[1]

_____

        [1] On January 23, 2026, the same day she filed her motion to vacate, Plaintiff also filed a
notice of appeal.  (*See* ECF No. 68.)  A district court may consider a motion under Rule 60(b)
while an appeal is pending pursuant to Federal Rule of Civil Procedure 62.1, which provides that
a court may:  "(1) defer considering the motion; (2) deny the motion; or (3) state either that it
would grant the motion if the court of appeals remands for that purpose or that the motion raises

## I.    BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case, as set forth in its January 13, 2026 Opinion & Order on Defendants' motion to dismiss.  *See Hammer v. Town of Bedford*, No. 25-CV-2618, 2026 WL 100793 (S.D.N.Y. Jan. 13, 2026) (the "Opinion"). In short, on March 27, 2025, Plaintiff Melanie Hammer filed suit against the Town of Bedford, New York (the "Town"); the Town's Department of Buildings; the Town's Zoning Board of Appeals ("ZBA"); the Town's Building Inspector, Albert Ciraco; and Town Attorneys Eric Gordon and Robert Zitt, alleging a conspiracy among Defendants to deprive Plaintiff of her constitutional rights under 42 U.S.C. § 1983.  (ECF No. 1.)  Specifically, Plaintiff alleged that Defendants conspired to deprive her of her property rights in a residential apartment built above a garage on her property in the Town (the "Structure"), and that they did so by issuing Notices of Violations, denying her applications for construction permits, denying her request for a use variance, erroneously interpreting the Town Code, and initiating criminal proceedings against her in Town Court, among other things.  (*See generally* ECF Nos. 1, 41.)

On January 13, 2026, I granted Defendants' motion to dismiss Plaintiff's Amended Complaint, (ECF No. 41 ("AC")).  *See generally Hammer*, 2026 WL 100793.  On January 23, 2026, Plaintiff filed her motion seeking relief from judgment under Federal Rules of Civil Procedure ("FRCP") 60(b)(2), 60(b)(3), and 60(b)(6).  (ECF No. 67.)  The following day,

---

a substantial issue."  Fed. R. Civ. P. 62.1(a); *see* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed in Rule 4(a)(4)(A) [which includes a motion under Rule 60] – the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *Palladino v. JP Morgan Chase & Co.*, 807 F. Supp. 3d 163, 170-71 (E.D.N.Y. 2025) (court had jurisdiction to deny Rule 60(b) motion after it granted motion to dismiss even though the plaintiff had also filed a notice of appeal at same time).  Accordingly, I have jurisdiction to consider and deny Plaintiff's motions.

Plaintiff filed a motion for *in camera* review of the redactions within an 800-page Freedom of Information Law ("FOIL") production she received from the Town, in case the Court was concerned "whether its prior decision rested on a complete and accurate factual record."  (ECF No. 69.)

## II.    <u>LEGAL STANDARD</u>

"Rule 60 concerns relief from a final judgment, order or proceeding . . . ."  *Shekhem El v. Hiller*, No. 24-CV-730, 2026 WL 579193, at *1 (S.D.N.Y. Feb. 27, 2026).[2]  Rule 60(b) provides, in pertinent part, that a court may, in its discretion, provide such relief "'for the following reasons:  (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)' or '(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.'"  *TAL Props. of Pomona, LLC v. Village of Pomona*, No. 17-CV-2928, 2019 WL 3287983, at *5 (S.D.N.Y. July 22, 2019) (quoting Fed. R. Civ. P. 60(b)).  The Rule also permits courts to relieve a party for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule 60(b)(2) and 60(b)(3) motions must be made "no more than a year after the entry of the judgment or order or the date of the proceeding," and all motions under Rule 60(b) "must be made within a reasonable time."  Fed. R. Civ. P. 60(c)(1).

"Rule 60 is intended to preserve 'a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'"  *Lewis v. Newburgh Hous. Auth.*, No. 11-CV-3194, 2022 WL 17177967, at *4 (S.D.N.Y. Nov. 23, 2022) (quoting *Am. Tissue, Inc. v. Arthur Andersen L.L.P.*, No. 02-CV-7751, 2005 WL 712201, at *2 (S.D.N.Y. Mar.

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations and footnotes.

28, 2005)).  In striking this balance, "'a motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances.'"  *Blinkoff v. City of Torrington*, No. 21-CV-1516, 2025 WL 2532707, at \*1 (D. Conn. Sept. 3, 2025) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)), *appeal filed*, No. 25-2345 (2d Cir. Sept. 29, 2025).  The party seeking relief from the prior judgment has the burden of proof, *see Int'l Bhd. of Teamsters*, 247 F.3d at 391, and the standard that party must meet is onerous, *see Waske v. Lehman Bros. Holdings Inc.*, No. 20-CV-5083, 2023 WL 348135, at \*1 (S.D.N.Y. Jan. 19, 2023).  Rule 60 "is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'"  *Edwards v. Rochester Inst. of Tech.*, No. 10-CV-6553, 2018 WL 3017094, at \*1 (W.D.N.Y. June 18, 2018) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)).

## III.   DISCUSSION

### A.   Rule 60(b)(2)

Plaintiff argues that newly discovered evidence undermines several bases for the Court's dismissal of the AC.  (*See* ECF No. 67-2 ("P's Mem.") at 2-3, 6-22.)  Specifically, Plaintiff argues that newly discovered evidence:  (1) undermines the Court's finding that the Town's attorneys were entitled to absolute immunity, (*id.* at 2-3, 8-9, 16-17); (2) undermines the Court's finding that Plaintiff had a full and fair opportunity to litigate the issues in the prior proceedings and thus that collateral estoppel applied and Plaintiff received due process, (*id.* at 10-13); (3) establishes that she had a constitutionally protected property interest and thus undermines the Court's dismissal of Plaintiff's due process and takings claims, (*id.* at 13-16); and (4) supports municipal liability under *Monell*, (*id.* at 17-22).

"Rule 60(b)(2) authorizes a court to relieve parties from judgments in the face of newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial."  *Castro v. Bank of N.Y. Mellon*, 852 F. App'x 25, 29 (2d Cir. 2021) (summary order).

> According to Rule 60(b)(2), a movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Shekhem El*, 2026 WL 579193, at \*2; *see Castro*, 852 F. App'x at 29.

### 1.    Absolute Immunity

I begin with Plaintiff's argument that newly discovered emails undermine the Court's finding of absolute immunity.  Plaintiff argues that emails produced via FOIL after the completion of briefing on the motion to dismiss demonstrate that the Town Attorneys acted in an administrative and investigative capacity, because these emails show, among other things, that Defendant Gordon drafted the ZBA's resolution and that he and Defendant Zitt "participat[ed] in shaping the factual and procedural framework of zoning proceedings before any criminal prosecution commenced."  (P's Mem. at 8-9, 16-17.)  Defendants argue that the documents Plaintiff cites have no relation to the claims that the Court dismissed on absolute immunity grounds.  (ECF No. 78 ("Ds' Opp.") at 12-13.)

I agree with Defendants.  The Court dismissed on absolute immunity grounds Counts Ten through Sixteen in Plaintiff's AC.  Counts Ten, Eleven, Fourteen, Fifteen, and Sixteen all asserted malicious prosecution claims against Gordon and Zitt.  (*See* AC at 48-56, 60-67.)  As explained in the Opinion, Plaintiff based her malicious prosecution claims on allegations that Defendants initiated prosecutions against her in Town Justice Court despite the lack of probable

cause, caused a summons to be served upon her, and personally arraigned her.  *See Hammer*, 2026 WL 100793, at *18-19, 23-24.  (*See* AC ¶¶ 222-23, 226-27, 241, 245, 248, 270-74, 278, 285-96.)  Similarly, Count Twelve alleged that Zitt violated Plaintiff's Sixth Amendment right to a speedy trial and her Fourteenth Amendment due process rights by filing a second criminal prosecution against her after the statutory speedy trial period for the first prosecution had expired, (AC ¶ 254), and Count Thirteen alleged he violated her due process rights by failing to disclose *Brady* material during the criminal proceedings, (*id.* ¶¶ 264-69).  Thus, Plaintiff did not base her malicious prosecution, speedy trial or *Brady* claims on conduct that occurred outside of the criminal proceedings in Town Justice Court.  Accordingly, even if the newly discovered emails show that Gordon and Zitt engaged in non-prosecutorial functions in other instances in their capacity as Town Attorneys, including conduct before the ZBA prior to initiating the prosecutions against Plaintiff, this would not change the Court's determination that absolute immunity attached to the conduct of which Plaintiff complained in her AC, which consisted solely of prosecutorial functions.

Additionally, Plaintiff's argument ignores the fact that the Court supplied alternative grounds on which it dismissed Counts Ten through Sixteen, which grounds would not be affected by the emails.  In the Opinion, the Court explained that even if the Defendants were not entitled to absolute immunity for their actions, (1) Plaintiff had failed to state a claim for malicious prosecution because she had not plausibly alleged that Defendants' conduct resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating her Fourth Amendment rights or that Defendants lacked probable cause, *see Hammer*, 2026 WL 100793, at *19-21; (2) any constitutional speedy trial claim was baseless because a six-month period is too short to raise a substantial Sixth Amendment issue, *id.* at *21-22; and (3) any *Brady* claim was

meritless because Plaintiff never went to trial and was not convicted, *id.* at *22-23.  Even if

Gordon and Zitt were not entitled to absolute immunity, the emails would not alter my

conclusions as to the merits of these claims.

Similarly, to the extent that Plaintiff seeks to use this evidence to assert her claims against

Zitt and Gordon on new grounds, that is impermissible, *Edwards*, 2018 WL 3017094, at *1 (Rule

60 not a vehicle for presenting case on new theories), and, in any event, these claims would still

fail.  Plaintiff highlights that Gordon drafted and circulated the ZBA resolution that denied

Plaintiff's application for a use variance, (P's Mem. at 8), but such conduct would hardly qualify

as malicious prosecution.  To state a claim for malicious prosecution under § 1983, a plaintiff

must plausibly allege the following elements:  "(1) the initiation or continuation of a criminal

proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of

probable cause for commencing the proceeding; and (4) actual malice as a motivation for

defendant's actions."  *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 263 (E.D.N.Y. Mar. 31,

2015), *reconsideration denied*, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 678 F. App'x

17 (2d Cir. 2017) (summary order).  Although Plaintiff suggests that a ZBA hearing is a "quasi-

judicial hearing," (P's Mem. at 2), she does not seriously contend that such a hearing is a

criminal proceeding or that drafting a resolution denying a variance application constitutes

initiating a criminal proceeding.  Nor could she seriously contend that the speedy trial clause or

the *Brady* decision apply to ZBA proceedings or that those proceedings terminated in her favor.

Thus, even if Plaintiff could change theories at this stage, no viable malicious prosecution claim

could be brought based on the attorneys' assistance to the ZBA.

Thus, because the emails would not have changed the outcome on Counts Ten through

Sixteen, they do not warrant relief under Rule 60(b)(2).

### 2.      Full and Fair Opportunity to Litigate

Plaintiff also argues that newly discovered evidence in the form of building and property records calls into question the Court's finding that Plaintiff received a full and fair opportunity to litigate her claims, such that collateral estoppel applied to bar them.  This is so, she contends, because the residential characterization of the Structure in the records was not disclosed in the prior proceedings, (P's Mem. at 11), and that characterization is material because it pre-dated the enactment of the Town Code, such that her residential use of the Structure should have been considered a lawful pre-existing, non-conforming use, (ECF No. 80 ("P's Reply") at 8-9). Plaintiff also argues that new evidence of "off-record communications" between the Town Attorney and ZBA undermines the Court's conclusion that the ZBA proceedings and subsequent Article 78 proceedings were fair and constituted a meaningful opportunity to be heard.  (P's Mem. at 11-12.)  Defendant argues that the documents have no relevance to the Court's ruling on Plaintiff's procedural due process claims, that Plaintiff already possessed the documents or only recently requested them from the Town, and that the arguments are duplicative of the allegations in her AC.  (Ds' Opp. at 14.)

### a.      Documents Regarding Residential Use

Beginning with Plaintiff's argument that the Town failed to disclose evidence showing that it had previously characterized the Structure at issue as "residential," Plaintiff's Rule 60(b)(2) motion fails because this evidence is not "new," could have been obtained with due diligence, does not show that the Town regarded the Structure as residential, and does not authorize that use.  Plaintiff points to the following documents:  (1) a survey/map of Plaintiff's property from October 29, 1987 that describes the Structure as a "1 story frame residence over garage," (ECF No. 80-1 at 7); (2) an electrical inspection certification dated June 26, 2012 that

describes the Structure as "Residential occupancy," (ECF No. 67-10); (3) a Certificate of Occupancy for a "Two-car garage" dated April 4, 2012, (ECF No. 80-2 at 2); (4) a survey/map of Plaintiff's property prepared by her architect, dated May 30, 2023, that incorporates the survey/map described in item (1) above, (*id.* at 3); (5) an application for a certificate of compliance dated July 26, 1988, that describes the buildings on the lot as "one family residence[s]," (*id.* at 4); (6) a letter to the Town Building Inspector dated July 10, 2014 regarding a smoke/carbon monoxide detector in the "recreation room," (*id.* at 5); (7) a Certificate of Workers' Compensation Insurance dated April 29, 1988, attaching a portion of the same survey/map described in item (1) and an application for a building permit from May 5, 1988, (ECF No. 67-8; ECF No. 80-2 at 6-7); (8) the same survey/map of Plaintiff's property stamped as received in the Town Building Department on August 30, 2000, (ECF No. 67-8 at 3; ECF No. 80-2 at 8); (9) an illegible Certificate of Occupancy dated 1973, (ECF No. 80-2 at 9), (10) a Certificate of Occupancy from July 11, 2014 for a "Finished recreation room over garage – already built," (ECF No. 67-11); and (11) sketches of the Structure bearing a Building Department "received" stamp dated June 26, 2012 and on which someone at some time handwrote "kitchen" and "bathroom" on the "game room floor plan," (ECF No. 67-21). (*See* ECF No. 67-1 ¶¶ 4-9.) Plaintiff does not state when she came into possession of any of these documents, except for item (1), which contains one version of the survey/map, is attached to her

reply as Exhibit 6, (ECF No. 80-1 at 7),[3] and was produced on February 12, 2026[4] in response to her FOIL request made on January 12, 2026.  (*See* P's Reply at 10.)

As for the other documents, she has not shown that they are new, and there is every reason to believe they are not.  In arguing that the Town falsely stated in a January 12, 2026 FOIL response that "[t]here is nothing listing the [S]tructure as 'residential' in the building department," (ECF Nos. 67-9, 80-1 at 8), Plaintiff states that she was then already "aware of multiple documents in the Town's own records explicitly characterizing the Structure as 'residential,'" including what she describes in her reply as Exhibits 8-12, (ECF No. 80-2 at 1-5), which are items (2) through (6) above.  (P's Reply at 10).  She further states that these records prompted her to "review the land survey already in her possession," apparently referring to the survey she provides as Exhibit E in her initial brief and Exhibit 13 in her reply, (ECF Nos. 67-8, 80-2 at 7), which is item (7) above and which she notes was "previously produced by Defendants."  (P's Reply at 10.)  She does not say when Defendants produced this survey.  She also does not state when she came into possession of the documents she lists in her reply as Exhibits 14 and 15, which are items (8) and (9) above, (ECF No. 80-2 at 8-9).  (P's Reply at 12.) Nor does she provide any information about Exhibit H, which is item (10) above, (ECF No. 67-

---

[3] In her opening brief, Plaintiff refers to the attached exhibits by letter, but she did not include those letters on the exhibits themselves or include exhibit slips dividing the exhibits in the e-filed version or the electronic courtesy copy she supplied to the Court via email.  Similarly, in her reply brief, Plaintiff refers to the attached exhibits by exhibit number, but she did not separately file her exhibits, include exhibit slips dividing the exhibits, or include exhibit numbers on the exhibits themselves.  It is thus not always clear to which exhibit she is referring at any given time.  Nevertheless, the Court has done its best to determine to which exhibit Plaintiff means to refer, and cites to each exhibit by its Electronic Court Filing ("ECF") number and the page numbers automatically generated by the ECF system.

[4] Plaintiff states that the map was produced on February 13, 2026, (P's Reply at 5, 10), but the FOIL response itself is dated February 12, 2026, (ECF No. 80-1 at 6).  The difference is immaterial.

11), or Exhibit S, which is item (11) above, (ECF No. 67-21).  Given that it seems from Plaintiff's own statements that she was already in possession of these documents before judgment was entered on January 13, 2026, and without showing when she received them, Plaintiff cannot meet her high burden on a Rule 60(b) motion to show that the evidence is newly discovered.

Plaintiff seems to suggest she received these records in response to a FOIL request. Having previously listed Defendants' various statements to state courts about the illegality of the garage apartment and the need for a use variance, (P's Reply at 4), she states that "subsequent FOIL productions revealed [that Defendants] had" "ma[de] explicit misrepresentations to the courts regarding the [S]tructure's legality and history of residential use," (*id*. at 11).  She does not say when after the state court litigation she made these requests – that case ended when the Second Department issued its opinion on Plaintiff's appeal in October 2025, *see Hammer v. Town of Bedford*, 240 N.Y.S.3d 204 (2025) – but has provided documentation showing she made FOIL requests in June 2025, December 2025 and January 2026, (*see* ECF Nos. 67-4, 67-15, 80-1 at 8, 80-1 at 6).  To the extent that Plaintiff suggests she received these records in response to her June 2025 FOIL request, (*see* P's Mem. at 1-2; ECF No. 67-1 ¶ 33), that request sought materials generated or received from April 1, 2023 to the present and specifically stated that it was not seeking public court filings or the building department file itself, (ECF No. 67-4).  Thus, it is unlikely that she would have received any of the above-listed eleven documents (except perhaps item (4), the 2023 survey/map which she surely already had, as it was prepared by her own architect) in response to that request.  Plaintiff submitted another FOIL request on December 21, 2025, in which she requested records reflecting the residential classification of the property. (ECF No. 80-1 at 8.)  But she could not have received these records in response to that request

11

because the Town represented that there were "no documents responsive to this request." (*Id.*) She then again requested documents relating to the Structure in January 2026. (ECF No. 80-1 at 6.) In that request, Plaintiff stated that her property was "identified in multiple Town records as a '1-story residence over garage,'" (*id.*), and thus she must have had those records before that date.

In short, even if these records were obtained in response to a FOIL request, Plaintiff did not seek building and property records from the Town via FOIL until December 21, 2025, which was more than nine months after Plaintiff commenced this litigation, more than six months after Plaintiff filed her AC, and more than four months after the briefing on the motion to dismiss closed. Plaintiff offers no reason why she did not seek these specific records sooner, and her failure to do so prevents her from arguing she exercised due diligence and was justifiably ignorant. *See Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 703 F.2d 1152, 1180-81 (10th Cir. 1983) (*en banc*) (60(b)(2) movant had not exercised due diligence because the new evidence could have been discovered earlier had plaintiff promptly filed formal Freedom of Information Act requests); *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, No. 06-CV-5033, 2012 WL 3577995, at *3 (S.D.N.Y. Aug. 16, 2012) (documents obtained via a FOIA request could not be considered new where they were readily discoverable with reasonable diligence), *aff'd sub nom. Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118 (2d Cir. 2013); *United States v. All Right, Title & Int. In Prop. & Premises Known As 710 Main St.*, 753 F. Supp. 121, 127 (S.D.N.Y. 1990) (denying rule 60(b)(2) motion because government failed to show it could not have found evidence earlier had it exercised due diligence where evidence had been in possession of municipality as public document since before case was filed). In other words, because the building and property records on which Plaintiff now relies are public records, they

cannot be considered newly discovered evidence.  *See Ramos v. Matke Realty, Ltd.*, No. 98-CV-3582, 1999 WL 61437, at *3 (S.D.N.Y. Feb. 4, 1999) (records of lead paint violations in plaintiff's building could not be considered newly discovered evidence because "[e]vidence that is contained in the public records at the time of the initial judgment cannot be considered newly discovered evidence"); *Int'l Ctr. for Tech. Assessment v. Leavitt*, 468 F. Supp. 2d 200, 207 (D.D.C. 2007) ("Publicly available information cannot constitute newly discovered evidence.").

Plaintiff argues she sought records from the Town as early as January 2024, (P's Reply at 18), but that attempt was not a FOIL request.  Rather, it was a discovery request made to the court in her Article 78 proceeding, to which Defendants had no duty to respond absent a court order.  (ECF No. 67-13; *see* ECF No. 45-2 at 8-9 (denying Plaintiff's request for discovery).)  Further, at that time, Plaintiff only requested communications between the respondents, and between respondents and her former tenant and the tenant's family.  (ECF No. 67-13.)  She did not request building or property records.  (*Id.*)  Her requests in September and October 2024 were emails to the court in her criminal case and seem to relate to material redacted from the prosecution's discovery.  (ECF No. 67-14; *see* ECF No. 67-3 at 2 (describing request from September as "seeking internal emails").)[5]  Both the Article 78 and criminal cases were dismissed without the court ordering Defendants to respond to Plaintiff's discovery requests.  (*See* ECF No. 45-2 at 8-9; ECF No. 1-5.)  Thus, from these dismissals, Plaintiff would have been aware that she would not receive the discovery she sought in those proceedings and that she

---

[5] Even though Plaintiff requested *Brady* material in her criminal case, the Town was, as explained in the Opinion, under no obligation to produce such material at that stage of the case, *see Hammer*, 2026 WL 100793, at *22; *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) (only timing requirement for disclosure of *Brady* material is disclosure in time for effective use at trial), and it is possible – even likely – that the Town did not produce the emails in response to her request because they do not constitute *Brady* material.

would need to seek it through other means.  Considering that the Article 78 judge issued his

decision denying her discovery request on February 9, 2024, (ECF No. 45-2 at 9), and her

criminal case was dismissed the second time on November 11, 2024, (ECF No. 1-5 at 3),

Plaintiff had ample time before she filed this action in March 2025 and amended in June 2025 to

seek the records via a FOIL request.  Thus, Plaintiff's efforts in her other cases do not

demonstrate her due diligence in attempting to obtain the records she now claims are newly

discovered.

Moreover, Plaintiff's Exhibit I, (ECF No. 67-12), on which Plaintiff relies for her

argument that the Town withheld material, (*see* ECF No. 67-3 at 2; P's Reply at 17-18), shows

that on or before September 18, 2024, the Town Attorney produced in the criminal case, among

other things, the "Town of Bedford Building Department File."  It thus appears that Plaintiff was

in possession of the documents at issue months before she filed this lawsuit, and that they are not

at all new.

Further, even if they were new, the records do not show that the Town, rather than third

parties, characterized the Structure as residential.  The FOIL response says that "[t]here is

nothing listing the [S]tructure as 'residential' in the building department."  (ECF Nos. 67-9, 80-1

at 8.)  Some of the documents to which Plaintiff points as contradicting that statement may have

been found in Building Department files – Plaintiff does not make clear which ones, but some

are stamped "received" by that Department, (*see, e.g.*, ECF No. 80-2 at 8) – but none of them

constitute a determination by the Building Department.  In item (1) above, (ECF No. 80-1 at 7),

it is the surveyor who describes the Structure as having a "residence over garage," and that same

survey is incorporated in items (4), (7) and (8), (ECF Nos. 80-2 at 3, 80-2 at 6-7, 67-8 at 3, 80-2

at 8).  In item (2), (ECF No. 67-10), it is a private electrical inspector who describes the premises

as "Residential occupancy."  The Court is baffled by Plaintiff's reliance on items (3), (ECF No. 80-2 at 2), and (10), (ECF No. 67-11), which are indeed determinations by the Building Department, but give authority to occupy or use the "[t]wo-car garage" and "[f]inished recreation room over garage," not an apartment.  Item (5), (ECF No. 80-2 at 4), is an application by a prior owner.  The Court is also baffled by Plaintiff's reliance on item (6), (*id.* at 5), which says the smoke/carbon monoxide detector was "installed in the recreation room."  Item (9), (*id.* at 9), has no content, and item (11), (ECF No. 67-21), has no even arguable relevance in the absence of information about when and by whom the handwritten notations were affixed, which Plaintiff does not provide.[6]  None of these documents suggest that the Building Department approved the use of the space over Plaintiff's garage as a residence, and thus it is far from clear that the January 12, 2026 FOIL response is false.  But even if it is, by Plaintiff's own account she already knew of the allegedly contradictory documents, and it is in any event hard to imagine how a false statement in January 2026, responding to a FOIL request from December 2025, could have any effect on a motion to dismiss that was fully briefed in August 2025 and addressed an Amended Complaint filed in June 2025.

Finally, even if the documents were newly discovered, and even if Plaintiff were correct that they show that the use of the space above the garage as an apartment was a pre-Town Code, permit-era, lawful non-conforming use that was grandfathered in because it was "recognized" by the Town, (P's Reply at 7, 10-13; *see* P's Mem. at 13-14), it appears that that use ceased to be legal in 2014, as set forth in Part III.B below.

---

[6] For example, if a building department employee made the notations as part of the Town's dispute with Plaintiff beginning in or about 2023, (*see* AC ¶¶ 18-22), they would hardly reflect any "characterization" of the Structure, let alone the Town's.

In short, the building department documents to which Plaintiff points provide no reason to disturb the Court's prior ruling under Rule 60(b)(2).

b.   Alleged "Off-Record" Communications

Turning to Plaintiff's second argument, Plaintiff's contention that the emails between the ZBA and its attorney constitute *ex parte* communications, (P's Mem. at 8 n.9; *see* P's Reply at 11-12), is preposterous.  *Ex parte* communications are defined as "contacts between the adjudicator and an interested party, of which the other party is unaware."  *See William Jefferson & Co. v. Bd. of Assessment & Appeals No. 3 ex rel. Orange Cnty.*, 695 F.3d 960, 966 (9th Cir. 2012) (citing Black's Law Dictionary 657 (9th ed. 2009)).  Here, Gordon was not counsel to a party appearing before the ZBA; rather, as Town Attorney, Gordon was the ZBA's attorney and legal advisor.  Thus, emails between Gordon and the ZBA do not constitute improper *ex parte* communications.  *See William Jefferson & Co.*, 695 F.3d at 966 (communications between board and counsel for county were not *ex parte* where counsel did not represent any party to plaintiff's appeal but rather was board's legal advisor).  Consequently, these communications would not support a procedural due process claim.  *See id.*

Plaintiff's suggestion that Gordon was an interested party who communicated with the adjudicator, the ZBA, (P's Mem. at 12), is nonsensical.  Plaintiff alleges that Gordon sent the ZBA a draft of the written resolution denying Plaintiff's application on November 30, 2023, the day after Plaintiff named him as a respondent in her Article 78 petition.  (P's Mem. at 8.)[7]  She seems to suggest that Gordon became an interested party by virtue of her suing him, and thus that his communications with the ZBA were improper after that point.  If that were so, anybody could

---

[7] Although Plaintiff alleges Gordon sent the draft resolution on November 30, 2023, (P's Mem. at 8), the email is actually dated December 1, 2023.  (*See* ECF No. 67-22.)  But again, the difference is immaterial.

force an opposing party to fire the lawyer of their choice just by naming that lawyer in a lawsuit. In any event, Plaintiff suing Gordon may have made him an interested party in the Article 78 proceeding, but not in any adjudication being considered by the ZBA. The Article 78 petition did not alter Gordon's role as counsel to the ZBA, nor did it render his communications with his own client *ex parte*. Additionally, the ZBA had already denied Plaintiff's application at the hearing on November 2, 2023, (AC ¶¶ 36, 38), which necessarily occurred before she could file her Article 78 petition, (*see id.* ¶ 39). The Court does not see how drafting a written version of a decision already rendered would be improper or suggests a retaliatory motive (even assuming Gordon was aware that Plaintiff had named him in the petition filed two days before). Further, Plaintiff argues that Gordon's drafting the resolution was improper because it necessarily meant that deliberations were not "confined to the public record." (P's Mem. at 11.) By Plaintiff's logic, every communication between judges and their law clerks while drafting an opinion, or every discussion among the members of a Court of Appeals or the Supreme Court, would render the proceedings unfair and violative of due process if those communications did not also include the parties. That is plainly absurd.

Similarly, although Plaintiff claims that Gordon, by sending the ZBA a memorandum on Plaintiff's application before the November 2 hearing, "crafted a legal reason for the ZBA to deny the Appeal before ever hearing it," (P's Reply at 13), this is pure speculation that cannot satisfy Plaintiff's burden on a Rule 60(b)(2) motion, *see Berg v. Polis*, No. 96-CV-396, 1997 WL 573418, at *2 (N.D. Cal. Sept. 5, 1997) ("Litigation by hunch and speculation is not sufficient under Federal Rule of Civil Procedure 60(b)."). One of the emails shows that Gordon sent the ZBA a confidential memorandum the day before it met on Plaintiff's application, (ECF No. 80-3 at 1), but she has not suggested how or why doing so would be improper. She has provided no

case law to support the notion that a Town Attorney cannot provide his client with legal advice and analysis on applications pending before it.  In short, contrary to Plaintiff's belief, any communications between Gordon and the ZBA prior to or after the ZBA hearing do not materially bear on whether the proceedings were fair or whether the ZBA was impartial.

Accordingly, these emails would not change the outcome on Plaintiff's due process claims, nor do they reflect in the slightest on the fairness of the Article 78 proceeding, and thus they do not warrant relief under Rule 60(b)(2).[8]

### 3. Protected Property Interest

Plaintiff next argues that newly discovered evidence establishes that she has a protected property interest in the apartment above the garage because Town records, including some that pre-date the enactment of the Town Code, describe the Structure as a residence, and therefore the apartment constitutes a lawful, pre-existing, non-conforming use.  (*See* P's Mem. at 13-16.) Defendants argue that the evidence to which Plaintiff refers is not newly discovered because Plaintiff had a version of the 1987 survey before she commenced this litigation.  (Ds' Opp. at 1, 6, 9-10.)  Defendants also argue the documents are cumulative, (*id.* at 8, 11), and are not relevant

---

[8] To the extent that Plaintiff argues that the allegedly false January 12, 2026 FOIL response in which the Town stated that the building department did not have any records that listed the Structure as "residential," (ECF No. 67-9), constitutes newly discovered evidence that warrants relief on her due process claims, (P's Mem. at 12, 15; *see* P's Reply at 15), Plaintiff is incorrect.  The Court dismissed Plaintiff's procedural and substantive due process claims after finding that Plaintiff received constitutionally adequate procedural due process before the ZBA and the Article 78 courts, and was provided a full and fair opportunity to litigate her claims, such that collateral estoppel barred her substantive due process claim.  *See Hammer*, 2026 WL 100793, at *9-12.  The FOIL denial, which occurred years after those proceedings, cannot constitute evidence that those proceedings were unfair, and as such does not bear on her due process claims.  Thus, this evidence cannot satisfy the standard under Rule 60(b)(2) because it would not have changed the outcome on those claims.

to the issue that the Court addressed in the Opinion when dismissing the takings claim, (*id.* at 11-12).

As explained above, Plaintiff rests her argument with respect to her protected property interest on several "new" documents, but these documents likely were provided to her in 2024, and in any event Plaintiff has not shown that they are new or could not have been discovered had Plaintiff diligently sought them via a FOIL request.

With respect to the survey/map that described the Structure as "residential" dating back to 1987, Plaintiff argues that she could not determine that it was created in 1987 until she received the map referred to as Exhibit 6 from the Town on February 12, 2026, (ECF No. 80-1 at 6-7) – item (1) above – because this version was the only one in which both the label "residential" and the date were legible, (P's Reply at 5; *see id.* at 10). She further argues that because she did not receive this version until after judgment had been entered, this evidence is newly discovered, (*id.* at 10-11, 15), despite the fact that she had other versions of the map in her possession in 2023, (ECF No. 79-1). But there are two problems with this argument.

First, as discussed above, Plaintiff did not exercise due diligence in attempting to obtain this evidence because she did not submit a FOIL request for these types of records (property or building records) until December 2025. (ECF No 67-9.) *See Malandris*, 703 F.2d at 1180-81 (60(b)(2) movant had not exercised due diligence because the new evidence could have been discovered earlier had plaintiff promptly filed formal Freedom of Information Act requests); *Colucci*, 2012 WL 3577995, at *3 (documents plaintiff eventually received through FOIA were readily discoverable in the public record with reasonable diligence and thus could not be considered new); *All Right*, 753 F. Supp. at 127 (denying rule 60(b)(2) motion where government failed to show it could not have found evidence earlier had it exercised due diligence

19

where evidence had been in possession of municipality as public document since before case was filed); *see also Ramos*, 1999 WL 61437, at \*3 ("Evidence that is contained in the public records at the time of the initial judgment cannot be considered newly discovered evidence.").

Second, Plaintiff must have known the date of the map/survey before receiving the latest, "legible" version of the survey because she made the instant motion before she received it. Despite her claim that receiving the map on February 12, 2026 made her realize, "after [she] filed the Rule 60(b) motion," (P's Reply at 10), that her apartment had been described as a residence before the enactment of the Town Code, in Plaintiff's brief filed January 23, 2026 Plaintiff argued that newly discovered evidence, "including a permit-era survey identifying the structure as a residence and other Building Department records reflecting residential classification, demonstrate[s] that the structure was identified and treated by the Town itself as a residential use for decades," and therefore that the apartment constituted a lawful, pre-existing residential use in which she had a vested property right, (P's Mem. at 13). This statement, made before she received the more legible version of the survey, (ECF No. 80-1 at 7), belies any argument that she did not know from the records she already had in her possession that the survey/map had described the Structure as a residence.

Indeed, there can be no dispute that in 2023, well before Plaintiff filed her complaint in this case, she had in her possession at least two versions of that survey/map from which she could easily have pieced together that the document dated back to 1987. (*See* ECF No. 79-1 at 1-3.) Plaintiff submitted in the Article 78 litigation the surveys at ECF No. 80-2 at 7 and ECF No. 80-2 at 8. (*See id.*) I agree with Plaintiff that the writing on the portion of the survey at ECF No. 80-2 at 8 that depicts the Structure was illegible, but the date was not. The date on this survey is not cut off, and states the survey was conducted on October 29, 1987, and the map was

completed in November 1987.  (*See* ECF No. 80-2 at 8.)  And, although the date is cut off on the other version of the map Plaintiff had in her possession, the writing "residence over garage" on the Structure was legible.  (ECF No. 80-2 at 7.)  The maps are clearly of Plaintiff's property, which she must have known because she filed them both in 2023 as "[p]roof [that the] [s]tructure in [q]uestion is [l]egal."  (*See* ECF No. 79-1 at 1-3.)  Thus, with the exercise of due diligence, Plaintiff could have compared the two maps and determined that the map from 1987 described the Structure as a one-story frame residence over the garage.[9]  Therefore, even though she did not receive the most legible version of the survey/map until after judgment was entered, it does not constitute "newly discovered evidence" and does not warrant relief.  And even if she did not receive the other records on which she relies until after judgment was entered – which she has not come close to showing – she could have discovered that the survey dated back to 1987 had she exercised due diligence, and thus the evidence as a whole is not new.  *See Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*, 228 F.R.D. 125, 129 (N.D.N.Y. 2005) ("Evidence is not newly discovered if it was in the moving party's possession prior to the entry of judgment."), *aff'd sub nom. Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs., Inc.*, 172 F. App'x 382 (2d Cir. 2006).

---

[9] Plaintiff states she determined the date of the map by matching a number written on a version of the survey/map that was "previously produced by Defendants" to an unspecified permit number.  (*See* P's Reply at 10-11.)  She may be describing as a "permit" the 1988 Certificate of Workers' Compensation Insurance – item (7) above – which has the same number written on it as the survey/map and seems to have been produced with it.  (*See* ECF No. 80-2 at 6-7).  If so, it was apparent from this "previously produced" document that the map dated from at least 1988.  And even if the permit number to which Plaintiff refers is something else, she does not explain why she did not seek it from the Town before filing her AC and does not explain why she could not have determined the date of the survey/map from the versions she possessed in 2023.

Accordingly, because Plaintiff has not shown and cannot show that the evidence upon which she relies is newly discovered or that she was justifiably ignorant of it despite due diligence, the records describing the garage Structure as "residential" do not warrant relief from the Court's decision regarding her due process or takings claims under Rule 60(b)(2).[10]

### 4.    Municipal Liability

Finally, Plaintiff argues that the newly discovered evidence of the emails among Defendants demonstrates coordinated action against her by Town officials and suggests that their actions were taken pursuant to an established municipal practice or policy, which undermines the Court's decision on her *Monell* claim.  (P's Mem. at 17-18, 20-22.)  Defendants argue that Plaintiff's argument ignores the Court's basis for dismissing her *Monell* claim, and that these emails are cumulative of the allegations made in Plaintiff's AC that the Court assumed as true for the purposes of the motion.  (Ds' Opp. at 14-15.)

Defendants are correct in that I did not dismiss Plaintiff's *Monell* claim because she had not plausibly pleaded a municipal practice or policy, but rather because she had not plausibly pleaded any underlying constitutional violation, and therefore there could be no *Monell* claim. *Hammer*, 2026 WL 100793, at \*25-26; *see Mastromonaco v. County of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) ("It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation.") (summary order); *Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at \*10 (S.D.N.Y. Apr. 28, 2020) (court did not need to address *Monell* liability because underlying constitutional

---

[10] Moreover, as discussed in Part III.B below, it appears that any pre-existing non-conforming use ceased to be legal in 2014.  If so, even if these documents showed that the Town described the Structure as residential before the enactment of the Town Code and even if they were newly discovered, Plaintiff could not satisfy the standard under Rule 60(b)(2) because the documents would not have changed the outcome on her due process and takings claims.

claims did not survive).  As explained above, the emails and other documents would not change the outcome on Plaintiff's other constitutional claims, and consequently they would not change my decision on her *Monell* claim either.[11]  Therefore, Plaintiff has not met her burden to show that this evidence warrants relief under Rule 60(b)(2).

### B.      Rule 60(b)(3)

Plaintiff argues that the Court should grant her relief from judgment under Rule 60(b)(3) because Defendants misrepresented the residential nature and legality of her apartment to the court in the Article 78 proceeding, to this Court, and in response to her FOIL requests.  (P's Reply at 13-14; P's Mem. at 2, 9-10.)  Defendants argue that the FOIL response from January 12, 2026 claiming that there were no records describing the property as "residential" has no bearing on the Opinion, and that the Town did not withhold materials that were the subject of Plaintiff's FOIL requests.  (Ds' Opp. at 15-17.)

"Rule 60(b)(3) permits a court to relieve parties from judgments when the moving party shows fraud, misrepresentation, or misconduct by an opposing party."  *Castro*, 852 F. App'x at 29.  "To prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting [her] case."  *Shekhem El*, 2026 WL 579193, at *2.  "Generally, a Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."  *Castro*, 852 F. App'x at 29-30.

---

[11] These emails can also hardly be considered proof of anything because they are largely redacted.  Plaintiff merely speculates as to what the emails might show, but speculation about newly discovered evidence is insufficient to satisfy a movant's burden on a Rule 60(b)(2) motion. *See Berg*, 1997 WL 573418, at *2 ("Litigation by hunch and speculation is not sufficient under Federal Rule of Civil Procedure 60(b).").

The movant need only show that the non-movant's misconduct "substantially interfered" with the movant's ability to present her case, not that the outcome would have been different absent the misconduct. *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 316 (S.D.N.Y. 2003). "Substantial interference is established if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Thomas v. City of N.Y.*, 293 F.R.D. 498, 504 (S.D.N.Y. 2013), *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) (summary order).

Plaintiff cannot show that any alleged misrepresentation about the prior residential nature of the Structure substantially interfered with her ability to prepare this case and defend against the motion to dismiss fully and fairly. As mentioned above, Plaintiff could have obtained the property records from the Town via FOIL request before filing her AC, and "a party who itself has access to such information cannot establish fraud under Rule 60(b)(3) because it cannot establish that its opponent's misrepresentation or failure to disclose prevented it from fully and fairly presenting its case." *In re Old Carco LLC*, 423 B.R. 40, 50 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 10-CV-2493, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) (summary order); *see Up State Tower Co., LLC v. Town of Southport*, 468 F. Supp. 3d 583, 595 (W.D.N.Y. 2020) (denying Rule 60(b)(3) motion where "Plaintiffs have offered no explanation as to how this publicly available information was 'concealed' from them, why they were prevented from bringing it to the Court's attention prior to the issuance of the [decision and order], or why Defendants were obligated to do so when Plaintiffs also had access to the information"); *Tolkin v. Pergament*, No. 11-CV-3467, 2012 WL 1132475, at *8 (E.D.N.Y. Mar. 31, 2012) (denial of 60(b)(3) motion appropriate

24

where information "could have been discovered by [plaintiff] independently prior to [the] settlement"); *Brinklys v. Duke*, No. 14-CV-1211, 2017 WL 3521744, at *8 (M.D. Fla. Aug. 16, 2017) (plaintiffs who alleged defendants withheld and cherry-picked newly discovered evidence failed to meet burden on 60(b)(3) motion because evidence was available to plaintiffs before entry of judgment, and,"[a] party cannot successfully bring a Rule 60(b)(3) motion where the pursuit of the truth was not hampered by anything except the movant's own reluctance to undertake an assiduous investigation"), *aff'd sub nom. Brinklys v. Johnson*, 752 F. App'x 828 (11th Cir. 2018). Additionally, concealment obviously did not preclude her inquiry into this theory of liability, because she later sought these documents despite the alleged misrepresentations.

To the extent that Plaintiff argues that misrepresentations hampered her ability to present her case in the underlying Article 78 proceeding, (P's Reply at 7; *see also id.* at 4 (listing as alleged misrepresentations statements made in state court proceedings regarding legality of residential use)), that is not the proper basis for a Rule 60(b)(3) motion. "In order to obtain relief pursuant to Rule 60(b)(3), a party must show that its adversary committed fraud in obtaining the judgment entered by the court, and it may not rely on allegations of fraud concerning an underlying proceeding." *Wahmann v. Kaur*, No. 15-CV-4326, 2016 WL 8711357, at *2 (E.D.N.Y. May 20, 2016); *see Clovis v. Herald Co.*, No. 89-CV-703, 1993 WL 56017, at *2 n.1 (N.D.N.Y. Mar. 1, 1993) (only issue on 60(b)(3) motion was whether defendants acted fraudulently with respect to judgment entered by district court, not whether defendants fraudulently obtained state court judgment). Moreover, Plaintiff could have sought these documents via FOIL before or during her Article 78 proceeding, too. Although she claims she sought them through discovery requests, as discussed those requests concerned only the internal

25

emails, and Defendants had no obligation to produce them absent a court order.  In any event, because Plaintiff could have sought the records relating to the history of the property by way of a FOIL request at any time, she cannot argue Defendants' failure to disclose them prevented her from fully and fairly presenting her case.

Further, concealment of evidence for purposes of Rule 60(b)(3) must have precluded inquiry into a *plausible* theory of liability, or denied access to evidence that would have been probative on an important issue.  *See Adidas Am., Inc. v. Thom Browne, Inc.*, 742 F. Supp. 3d 352, 365 (S.D.N.Y. 2024) ("Rule 60(b)(3) may be satisfied where the concealment precluded inquiry into a plausible theory of liability . . . ."); *Thomas*, 293 F.R.D. at 504 ("[E]ven misconduct or concealment of evidence does not substantially interfere with the moving party's presentation of their case if the evidence turns out to be cumulative, insignificant, or of marginal relevance.").  Here, Plaintiff's theory that the residential use of the Structure was grandfathered in does not appear to be plausible, and the evidence would not have been probative on that issue. Although records that pre-date the enactment of the Town Code describe the Structure as having a residential use, Plaintiff concedes the Structure was later converted into a recreation room. (ECF No. 67-11 (July 11, 2014 certificate of compliance authorizing occupancy of "[f]inished recreation room over garage – already built"); AC ¶ 9 ("garage/barn has a valid Certificate of Occupancy for a recreation room on its second floor")).  The Town Code states that a pre-existing, non-conforming use loses that designation if the non-conforming use ceases for a period of more than six months or is changed to a conforming use, and that future use of the property must then be in conformity with the Code.  *See* Bedford Town Code § 125-11(C)(4).  Thus, when the Certificate of Compliance granting permission to use the space as a recreation room was issued on July 11, 2014, (ECF No. 67-11; *see* ECF No. 67-19 at 4), it appears that the

Structure changed from a non-conforming use to a conforming use.[12]  Therefore, even if the records at issue reflected a decision by the Town (which they do not), and even if they showed that in the pre-Code era the space above the garage constituted a lawful, pre-existing, non-conforming residential use, once that use was changed to a recreation room in the post-Code era, it appears that Plaintiff was not permitted to revert the use to a residential one not in conformity with the Code.  Accordingly, not only does Plaintiff's newest theory of liability not seem to be plausible, but the Town's representations in litigation in 2023 and 2024 that the residential use of the Structure was not a pre-existing, nonconforming use, (*see, e.g.*, ECF No. 80-1 at 3), do not seem to have been misrepresentations at all.  Thus, these statements do not satisfy Plaintiff's high burden under Rule 60(b)(3).

Plaintiff also argues that the FOIL response in which the Town stated that the Building Department did not have any records listing the Structure as "residential" was a misrepresentation.  (P's Reply at 11.)  That is far from clear, *see* pages 14-15 above, but even it were, any such misrepresentation would not be material, *see Shekhem El*, 2026 WL 579193, at *2 ("To be entitled to relief under [Rule 60(b)(3)], the moving party must present clear and convincing evidence of material misrepresentations.").  First, as just explained, that Town records may have described the Structure as a residence before the Town Code was enacted does

---

[12] Plaintiff repeatedly argues that the July 11, 2014 Certificate of Compliance reflects approval of the space above the garage as a residence.  (*See, e.g.*, ECF No. 67-1 ¶ 7; P's Mem. at 1, 9.)  Plaintiff either failed to read or willfully mischaracterized the document, as it states that the owner is authorized to occupy or use the premises as a "[f]inished recreation room over garage," (ECF No. 67-11), not as an apartment or residence.  She also describes a prior Certificate of Occupancy dated April 4, 2012 as demonstrating the Structure's residential use because it "authoriz[ed] the *occupancy or use* of the property."  (P's Reply at 5 (emphasis in original); *see id.* at 10.)  But again Plaintiff either failed to read or willfully mischaracterized the document, as it states that the owner is authorized to occupy or use the premises as a "[t]wo-car garage."  (ECF No. 80-2 at 2.)  Thus, these certificates do not show that the Structure was authorized for residential use at the time they were issued.

27

not mean Plaintiff was entitled to use it as such after it had been converted into a recreation room.  Second, this misrepresentation would not have prevented Plaintiff from presenting her case because it occurred on January 12, 2026, which was after the briefing on the motion to dismiss closed.  (P's Reply at 11; ECF No. 80-1 at 8.)  It also did not prevent Plaintiff from discovering records that described the Structure as residential, because Plaintiff concedes she already knew of such records when she received this response.  (P's Reply at 10-11.)  Accordingly, the January 12, 2026 FOIL response does not warrant relief under Rule 60(b)(3).

Finally, to the extent that Plaintiff suggests that Defendants' delay in providing her with Town records and internal communications warrants relief, (P's Mem. at 21), a failure to disclose or produce requested materials in discovery can constitute misconduct under Rule 60(b)(3), and such a failure does not need to be motivated by nefarious intent to warrant vacatur; even accidental omissions may be sufficient, *see Catskill Dev.*, 286 F. Supp. 2d at 314-15.  But there was no failure to provide discovery here, as this case was dismissed before any discovery occurred.  Plaintiff is thus left to argue that conduct occurring outside the scope of litigation should be treated like a discovery violation.  She provides no authority for that position and the Court has found none.  Further, as discussed at length, Plaintiff first requested the property and building records demonstrating the prior residential character of the Structure on December 21, 2025.  (*See* ECF No 67-9.)  Thus, any delay in receiving such records is the responsibility of Plaintiff, not Defendants.

Accordingly, none of the evidence that Plaintiff has presented satisfies her burden to present clear and convincing evidence of a material misrepresentation.  As such, Plaintiff's Rule 60(b)(3) motion is denied.

28

C.    **Rule 60(b)(6)**

Plaintiff argues that the Court may also vacate the decision under Rule 60(b)(6) in the interest of justice.  (P's Reply at 20.)  Defendants argue that Plaintiff cannot seek relief under this rule because she has moved for relief under both Rules 60(b)(2) and 60(b)(3).  (Ds' Opp. at 17.)

Rule 60(b)(6) is a catchall provision that allows a court to provide relief from judgment for any other reason that justifies relief, but "if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *In re Pinnock*, 833 F. App'x 498, 502 (2d Cir. 2020) (summary order).  In other words, "Rule 60(b)(6) allows a court to relieve parties from judgments for any other reason that justifies relief when the grounds enumerated in Rules 60(b)(1)-(5) are not present." *Castro*, 852 F. App'x at 30; *see BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) ("Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs.").  "Although [Plaintiff] failed to carry [her] burden under Rules [60(b)(2)] or (3), [her] reasons for seeking relief from the judgment fell within those more specific clauses, thereby disqualifying [her] from obtaining relief under Rule 60(b)(6)." *Castro*, 852 F. App'x at 30.  And even if Rule 60(b)(6) were available to Plaintiff, it "should only be applied in extraordinary circumstances." *BLOM Bank SAL*, 605 U.S. at 212.  Essentially for the reasons explained above, there are none here.  At bottom, the motion is based on Plaintiff's own lack of diligence and misleading description of documents, and nothing she has presented shows that the motion to dismiss was incorrectly decided.

Accordingly, Plaintiff's Rule 60(b)(6) motion is denied.

### D.    Motion for *In Camera* Review

Plaintiff asks the Court to "review the unredacted communications [produced in response to her FOIL request] *in camera* to determine whether they substantively bear on the issues of coordination, policy, and municipal liability." (P's Reply at 19.)[13]  Plaintiff first stated that she "does not seek discovery or disclosure of these materials at this stage," but only seeks an *in camera* review "to the extent the Court has any concern whether its prior decision rested on a complete and accurate factual record." (ECF No. 69 at 1.)  Plaintiff later requested, however, that the Court order the unredacted production of at least Exhibits 16 and 17, which are docketed at ECF No. 80-3 at 1-3 and 80-3 at 4.  (ECF No. 81 at 7.)  Defendants argue Plaintiff has not provided a basis for *in camera* review because nothing in the documents cited by Plaintiff provides a basis to revisit the Court's conclusions and her application amounts to a request that the Court consider materials outside the four corners of the AC on a motion to dismiss.  (ECF No. 78 at 18.)  In reply, Plaintiff argues that the Town has not justified the extensive redactions in its FOIL production and that the redacted internal emails are material to the Court's prior findings that the underlying proceedings were full and fair, that Plaintiff did not have a vested property right, that Plaintiff was afforded due process, that the Town Attorneys were entitled to absolute immunity, and that there was no *Monell* liability.  (*See* ECF No. 81 at 1-2.)  In short, Plaintiff reiterates the arguments made on her Rule 60(b) motion.

---

[13] Plaintiff's request concerns an 800-page FOIL production, (ECF No. 67-1 ¶ 24), that Plaintiff purports to attach as Exhibit Q to her memorandum in support of her Rule 60(b) motion to vacate the judgment, (*see* P's Mem. at 6 n.1; ECF No. 67-3 at 2).  But there is no Exhibit Q. Plaintiff did submit a summary chart, (ECF No. 67-6), and a few of the redacted emails, (ECF Nos. 67-5, 67-7, 67-23, 80-3).

As an initial matter, Plaintiff's request amounts to a challenge to the sufficiency of the FOIL response, which this Court has no authority to entertain. *See Jackson v. Wilcox*, No. 23-CV-130, 2023 WL 2756489, at *5 (N.D.N.Y. Apr. 3, 2023) ("[C]ourts have repeatedly held that federal courts lack jurisdiction to review FOIL claims . . . ."), *report and recommendation adopted*, 2023 WL 4230351 (N.D.N.Y. June 28, 2023); *Cammarata v. City Univ. of N.Y.*, No. 17-CV-6456, 2019 WL 3859401, at *9 (E.D.N.Y. Aug. 15, 2019) ("Federal courts . . . do not have jurisdiction to enforce state laws granting public access to official state records."); *Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014) (summary order).

In any event, as explained with respect to Plaintiff's Rule 60(b)(2) motion, the emails would not change the outcome on the motion to dismiss. Although Plaintiff argues that the emails "must be reviewed *in camera* because they are central to the Court's evaluation of the *Monell* coordination and immunity issues that formed the basis for the Rule 12(b)(6) dismissal," (ECF No. 81 at 4), that is not the case. The Court dismissed the claims against the Town Attorneys not just because they were absolutely immune, but also because Plaintiff failed to state a claim against them. Similarly, the Court dismissed Plaintiff's *Monell* claim not because she failed to allege a policy or widespread practice, but rather because she failed to state any underlying constitutional violation. Thus, even if the emails showed that the Town Attorneys engaged in non-prosecutorial functions or that they coordinated with other Town officials, those facts would not change the Court's ruling.

31

Similarly, although Plaintiff argues that the communications "are directly relevant to prosecutorial immunity, procedural due process, whether Plaintiff had a full and fair opportunity to be heard for purposes of collateral estoppel, and whether coordinated municipal action existed under *Monell*," (ECF No. 81 at 6), as already explained, even if the emails show that the Town Attorneys communicated with the ZBA prior to the hearing and drafted the resolution, that would not demonstrate that Plaintiff did not have a full and fair opportunity to be heard or did not receive procedural due process, (*see supra* Section III.A.2.b). Likewise, Plaintiff continues to argue that the Court relied on Defendants' prior representations that the residential use of the Structure was illegal, a premise that Plaintiff claims was "inaccurate." (ECF No. 81 at 4.) Plaintiff does not point to any respect in which the Court relied on any such representations,[14] and in any event that premise does not appear to have been inaccurate, based on the other evidence provided. (*See supra* Section III.B.) Thus, any such misrepresentation was immaterial to the Court's decision. This argument also does not seem to be relevant to whether the Court should review the redacted emails, as Plaintiff relied on other documents, not the emails, to demonstrate the early residential description of the Structure.

In short, even if the emails contain what Plaintiff speculates they might, they would not provide a basis for relief under Rule 60(b). Thus, the Court does not need to review these emails to decide the motion.

Further, Plaintiff's suggestion that *in camera* review might be appropriate to determine whether the Court's "prior decision rested on a complete and accurate factual record," (ECF No.

---

[14] The closest the Court came to any analysis of the Town Code was on page 20 of the Opinion, and that was based on my independent agreement with Judge Fufidio's analysis – not on Defendants' representations as to the illegality of the Structure. *See Hammer*, 2026 WL 100793, at *20.

69 at 1), misconstrues the nature of a motion to dismiss, which is decided based on the face of the pleading and limited other incorporated or integral documents, not on a "factual record." *See, e.g.*, *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Harrison v. City of N.Y.*, No. 15-CV-4141, 2017 WL 4162340, at *4 (S.D.N.Y. Sept. 19, 2017); *Callahan v. Credit Suisse (USA), Inc.*, No. 10-CV-4599, 2011 WL 4001001, at *1 n.1 (S.D.N.Y. Aug. 18, 2011). As such, although Plaintiff argues that "the Court's dismissal may rest on an incomplete record" because "the content of the redacted emails remains unknown," (ECF No. 81 at 3), that does not warrant *in camera* review, *cf. Mehne v. Rochester Psychiatric Ctr.*, No. 22-CV-6110, 2022 WL 17488633, at *5 (W.D.N.Y. Dec. 7, 2022) (plaintiffs could not avoid dismissal by claiming discovery would provide basis for claim where they had only unsupported speculation). A plausible claim must come before discovery, *J.V. v. Lake*, No. 23-CV-3419, 2024 WL 3236823, at *4 (S.D.N.Y. June 28, 2024), and thus whether the "record" is complete is irrelevant to determining whether Plaintiff has stated a plausible claim on which relief can be granted, *see McAlpin v. Am. Hardwoods Indus., LLC*, No. 15-CV-162, 2016 WL 1084139, at *2 (N.D. Miss. Mar. 17, 2016) ("A motion to dismiss pursuant to Rule 12(b)(6) is decided solely on the pleadings; thus, the degree of discovery conducted is irrelevant to a Rule 12(b)(6) motion."), *on reconsideration sub nom. McCalpin v. Am. Hardwoods Indus., LLC*, No. 15-CV-162, 2016 WL 3180106 (N.D. Miss. June 2, 2016); *Dock v. Rush*, No. 09-CV-0606, 2010 WL 11674098, at *3 (M.D. Pa. Apr. 21, 2010) ("[F]actual development is irrelevant to the disposition of a motion under 12(b)(6).").

Accordingly, Plaintiff's motion for *in camera* review is denied.

33

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motions are DENIED.  The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 67, 69).

**SO ORDERED.**

Dated:  April 14, 2026
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.